**STATE of Maine**

v.

**Gary Wayne SIMMONDS.**

Supreme Judicial Court of Maine.

Dec. 21, 1973.

Henry N. Berry, III, Cumberland County Atty., Peter Ballou, Asst. County Atty., Portland, for plaintiff.

Cram & Dalton by Edward C. Dalton, Jr., Falmouth, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

After a trial on June 14, 1972 a Superior Court (Cumberland County) jury found defendant, Gary Wayne Simmonds, guilty of having, in the nighttime of April 9, 1972, committed the offense of breaking and entering a building of Circus Time, Inc., situated at 265 Western Avenue in South Portland, Maine, with the intent to commit larceny therein (17 M.R.S.A. § 754). From the judgment of conviction entered on the jury verdict defendant has appealed to this Court.

We deny the appeal.

Defendant was indicted for the offense on May 5, 1972. On May 23, 1972 the Court, satisfied that defendant was indigent, appointed counsel to represent him at public expense. Defendant was arraigned on the same day and, with his appointed counsel present and participating, entered a plea of "not guilty."

On June 13, 1972, assisted by counsel, defendant sought to retract his plea of "not guilty" and simultaneously tendered a plea of "guilty." After a "Rule 11" (M.R.Crim.P.) inquiry, the presiding Justice declined to accept defendant's "guilty" plea. The plea of "not guilty" was kept in effect.

Subsequently, at approximately 3:00 p. m. the same day, the office of the County Attorney notified counsel that the case would go to trial the next day, June 14, 1972, at 9:30 a. m.

The next morning, as trial was about to commence (the jury having been impanelled but not yet sworn), counsel for the defendant requested a bench conference. His request was granted and at the bench, out of the hearing of the persons impanelled to be the jurors the following colloquy occurred:

"MR. MacNICHOL: I think I should state that the history of this case is that I attempted to plead my client guilty yesterday, there was a Rule 11 hearing at which time the Court refused to accept the plea. I was notified by the County Attorney's Office to be ready for trial today at 3:00 yesterday afternoon. I have been unable to converse with my client concerning his defense and that my prior conversations were many concerning plea bargaining. I have not been able to locate a witness that is critical to the State's case. My motion for discovery, which was filed seasonably, has not been answered. Today I was shown the State's file on the case, which does not answer my motion for discovery, that I am unprepared in my opinion to represent my defendant today in Court or to give him adequate trial, and I am citing the case of Rastrum vs. Warden ———. And further I bring to the Court's attention that no attempt was made by the Jail to put a jacket or tie on the defendant, that he comes in here looking like he just finished sweeping the streets. I think the State has a duty when a person is doing a sixty day jail term to bring him before this Court in a presentable manner.

"THE COURT: How long have you represented him? When were you appointed to represent him in this case?

"MR. MacNICHOL: I was appointed by you, Judge, I think it goes back to the

arraignment. It would be approximately three weeks I would think.

"THE COURT: Motion denied. Except as you mentioned it to me just prior to trial this morning, I was not aware of your problem with respect to your discovery. I will look into that at the first opportunity before this case goes too far. You did indicate that the State showed you their file so that I have got to assume if they showed you their file, they have disclosed all of the information available.

"MR. MacNICHOL: In the file.

"MR. POMEROY: In addition to showing him my file I indicated to him my notes, which I feel fairly summarizes the testimony of two State witnesses. I also indicated to him a potential item of evidence, a screwdriver. I told him where it was found, how it was found, and I told him who found it. I don't know of any other evidence in this case which I have not told my brother about."

The jury was then sworn as a panel, and the trial proceeded.

Defendant asserts, as a comprehensive first ground of appeal, that the denial of his motion for continuance was error because: (1) in all the circumstances it was an abuse of judicial discretion and (2) it required the defendant to be in the presence of the jury as an unclean, unkempt and inappropriately attired person, thereby prejudicing defendant by having him look guilty before the jury in violation of defendant's right to be deemed innocent throughout the trial until the evidence had proved him guilty beyond a reasonable doubt.

■ A presiding Justice has a broad latitude of discretion concerning the granting, or denial, of a continuance. State v. Carll, 161 Me. 210, 210 A.2d 680 (1965); State v. Curtis, Me., 295 A.2d 252 (1972); State v. Carey, Me., 303 A.2d 446 (1973); and an abuse of discretion will be found only if

"palpable error" or "apparent injustice" is established by the party charging the abuse. State v. Hume, 146 Me. 129, 78 A. 2d 496 (1951); State v. Curtis, supra.

■ Measured by these criteria defendant's claim of abuse of discretion in the instant situation fails.

The "discovery" problem mentioned during the bench colloquy was shown by the bench colloquy itself to have been unreal. After the prosecuting attorney had given his explanation to the presiding Justice, counsel for the defendant neither disputed the prosecutor's version of the facts nor persisted in a claim that a continuing problem of "discovery" remained. If defendant's trial counsel had some initial reservations about the State's compliance with his "discovery" requests, a fair reading of the record is that by the conclusion of the bench colloquy his doubts were resolved and the matter of "discovery" was closed.

■ In describing his inability to speak with a witness as a ground for continuance, counsel for defendant said only: "I have not been able to locate a witness that is critical to the State's case." He indicated nothing further concerning the extent of his efforts to "locate" the witness or the time when his efforts had been initiated. He gave no supporting information as to the identity of the witness or the particular respects in which his testimony would be "critical" (or even relevant, material or competent). So bare a conclusory recital as to "witness unavailability" cannot be allowed effectiveness, either by itself or as a "makeweight" operating in conjunction with other factors, to require appellate reversal of a discretionary trial-level ruling denying a continuance. State v. Curtis, supra; State v. Carey, supra.

We find defendant's grooming and attire, as described in the record by defendant's counsel, an insufficient factor to justify reversal of the judgment of conviction because of an alleged abuse of judicial discretion.

The jury would not be inclined to suspect that defendant was serving a sixty day jail term for another offense and had come from the jail to the courtroom for trial merely because defendant appeared without a jacket or tie "looking like he just finished sweeping the streets." The present situation, therefore, is markedly distinguishable from the circumstances of two cases upon which defendant heavily relies—Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971) and Eaddy v. People, 115 Colo. 488, 174 P.2d 717 (1946). In *Hernandez,* the defendant was tried while wearing actual jail garb (a white T-shirt with "Harris County Jail" stamped on the front and dungarees bearing the same inscription on front and back). In *Eaddy,* the defendant was tried while wearing a placard attached about his neck on which were the words "County Jail."

Further, that defendant was in the custody and control of government officials for the penal purposes of being confined· in a jail did not, per se, divest defendant, as an adult otherwise competent, of the responsibility which every adult has for the care and grooming of his own person. Neither does it create an affirmative obligation that the governmental officials who have the custody and control of defendant's body must ensure that defendant will be personally clean and appropriately groomed and attired for a Court appearance. Such responsibility remains with the defendant; and so long as the government officials who had the custody and control of his body for penal purposes did not deprive defendant of reasonable opportunity, and means, for his discharge of his own responsibility to himself for his personal cleanliness, grooming and dress, defendant has no basis for complaint. See: State v. Carver, 94 Idaho 677, 496 P.2d 676 (1972); Collins v. State, 70 Okl.Cr. 340, 106 P.2d 273 (1940).

■ The present record contains not the slightest suggestion that government officials had deprived defendant of reasonable opportunity, or means, to have his grooming and manner of dress other than it was. It is consistent with the record before us that it could have been defendant's wish to appear in the courtroom as he did. In any event, especially since counsel for defendant never intimated to the presiding Justice that he would be satisfied with a short delay to permit counsel to arrange for defendant to appear before the jury in the manner he (defendant's counsel) thought proper, there was no abuse of judicial discretion, or denial to defendant of a fair trial and due process of law, because the presiding Justice allowed the trial to proceed with defendant having the appearance which trial counsel described in the record.

■ Counsel arguing the appeal has placed heavy emphasis on the point that immediately prior to the commencement of trial, trial counsel explicitly represented to the Court:

" . . . I am unprepared in my opinion to represent my defendant today in Court or to give him adequate trial, . . .."

Although the expression of such "opinion" by trial counsel, either by itself or in combination with other circumstances, may, in some contexts, justify a continuance, it fails to follow that in each and every situation counsel's representation that he considers himself inadequately prepared per se establishes that the denial of a continuance, in the face of such expressed "opinion", is automatically an abuse of judicial discretion. See: State v. Curtis, Me., 295 A.2d 252 (1972); Rastrom v. Robbins, 440 F.2d 1251 (1st Cir. 1971).

Here, (1) the record reveals affirmatively that counsel had been appointed "approximately three weeks" before trial was to commence (2) nothing suggests that appointed counsel lacked experience in the trial of criminal cases and (3) counsel placed on record the underlying reasons for his "opinion" of unpreparedness. In these circumstances, whether counsel's stated reasons lend adequate support to his "opinion" is highly material to the appel-

late evaluation of the reasonableness of the discharge by the presiding Justice of his obligation to reconcile the interests at stake, i. e.,

" . . . the necessity for expedition in the progress of litigation and the requirement of fairness to litigants and their counsel." (Rastrom v. Robbins, supra, at p. 1252)

The primary reason assigned by trial counsel for his "opinion" of unpreparedness was that although he had engaged in many prior conversations with his client, they had been directed to "plea-bargaining", and when the "plea-bargaining" was unsuccessful, during the less than one day intervening before the case was being ordered to trial, counsel had been

"unable to converse with . . . client concerning his defense."

Implicit in trial counsel's approach was the underlying assumption that preparation for "plea-bargaining" and for "defense" are functionally discrete processes lacking in significant interrelationship, and, therefore, adequate preparation for "plea-bargaining" cannot, as such, yield adequate preparation for "trial." The premise is unacceptable. Under Rule 11 M.R.Crim.P., "plea-bargaining" as to a felony (as here) cannot culminate successfully unless and until the Court has made appropriate inquiry and not only "determines" that defendant's guilty (or nolo contendere) plea is made "voluntarily" and "with understanding of the nature of the charge" but also satisfies itself that "defendant in fact committed the crime charged." Hence, an attorney who conscientiously undertakes "plea-bargaining" must probe deeply into his client's understanding of the charge, his client's version of the facts and general knowledge of any and all matters relevant to guilt or innocence, including the client's awareness of the potential evidence and witnesses favorable or unfavorable to him, —thereby to afford counsel a foundation for a preliminary judgment of his own concerning the same matters ultimately to

be assessed by the Court and as to which counsel, as an officer of the Court, has an obligation to provide assistance and reassurance to the Court.

On this basis, then, it was not unreasonable for the presiding Justice to conclude that because trial counsel had engaged in many discussions with his client admittedly geared to "plea-bargaining", counsel had simultaneously acquired abundant information concerning the underlying merits of the total case which would enable him to give adequately effective representation at a trial to be held without further delay.

When we add to all of the foregoing the consideration that the transcript of the trial proceedings

" . . . reveals no evidence whatsoever that lack of preparation [if any] . . . rendered [defendant's] . . . counsel ineffective at trial . . ." (State v. Curtis, supra, 295 A.2d at p. 254)

the conclusion must be here, as it was in State v. Curtis, supra:

" . . . absent . . . factual showing that either the furtherance of justice required a continuance or that actual prejudice in fact resulted, . . . [defendant] has not sustained his burden of showing that the denial of a continuance by the presiding Justice constituted an abuse of discretion." (p. 254)

Another, and last, ground of appeal is a claim by defendant that the appeal record discloses a lack of effective assistance of counsel in manner sufficient to require this Court, in a direct appeal proceeding, to adjudicate that there had been a violation of defendant's right to adequate representation by counsel as guaranteed against State infringement by the Sixth-Fourteenth Amendments to the Constitution of the United States.

Defendant recognizes that constitutional infirmity in a judgment of conviction predicated on ineffective representation by

counsel at trial is, generally, not cognizable on direct appeal and is appropriately to be raised in collateral post-conviction proceedings. State v. Pullen, Me., 266 A.2d 222 (1970); State v. Lund, Me., 266 A.2d 869 (1970); State v. LeBlanc, Me., 290 A.2d 193 (1972). He maintains, however, that the present situation falls within the exception formulated in State v. LeBlanc, supra, insofar as, here:

" . . . the appeal record, within its own confines, establishes beyond possibility of rational disagreement . . . representational deficiencies by counsel . . . plainly beyond rational explanation or justification and . . . of sufficient magnitude to have made the trial, in effect, a sham." (State v. Le-Blanc, at p. 202)

The analysis by which we have sustained the denial of a continuance as a proper exercise of discretion by the presiding Justice is likewise dispositive of the contention now under scrutiny.

■ The premise of defendant's argument is that since, immediately prior to commencement of trial, counsel for the defendant expressly stated that he was of the "opinion" that he was "unprepared . . . to give [defendant] adequate trial", this suffices, ipso facto, to establish "beyond possibility of rational disagreement" that the assistance of counsel at the trial must have been ineffective. The premise is incorrect. Here, the record reveals that (1) there was a reasonable basis for the presiding Justice to believe that, notwithstanding counsel's own "opinion", counsel was in fact capable of affording effective representation at trial and (2) this reasonable expectation of the presiding Justice was amply confirmed in fact by the face of the record showing that at trial defendant was afforded a quality of legal representation which was not only effective but above average in its competence and skillfulness. The State v. LeBlanc exception is, therefore, patently inapplicable to the present situation. On the appeal

record now before us defendant's contention that he was deprived of effective assistance of counsel in violation of his constitutional rights is not cognizable in this direct appeal. State v. Pullen; State v. Lund; State v. LeBlanc, all supra.

The entry is:

Appeal denied.

All Justices concurring.

WEBBER, J., sat at argument but retired before the decision was rendered.

POMEROY, J., did not sit.