STATE of Maine

v.

Robert STINSON.

Supreme Judicial Court of Maine.
Argued Sept. 11, 1980.
Decided Jan. 8, 1981.

Before McKUSICK, C. J., GODFREY, NICHOLS and ROBERTS, JJ., and DUFRESNE, A. R. J.

## DUFRESNE, A. R. J.

Following trial de novo before a Cumberland County jury of the Superior Court, Robert Stinson, the defendant-appellant, was convicted of the offense of criminal mischief in violation of 17–A M.R.S.A. § 806(1)(A) (Supp.1978)[1] in connection with the first count of a complaint alleging that Stinson did intentionally and knowingly damage the property of the Central Maine Power Company, to wit, the passenger door of one of its trucks, causing a value loss of $99.00. He appeals from the ensuing judgment. We affirm the judgment.

On June 21, 1979, Howard Allen was driving a truck owned by his employer, Central Maine Power Company, along Route 117 from Hiram to Bridgton. Approximately four miles east of Harrison, Allen was in the act of passing by the defendant who had been seated by the edge of the road in a wheelchair, when Stinson stood and threw a rock at the truck, causing the window in the door on the passenger side to shatter.

The defendant's first points on appeal arise out of the following scenario. On April 14, 1980, after the jury had been impaneled and sworn, the defendant's counsel informed the presiding Justice that Stinson had requested him to withdraw.[2] Although hired by the defendant on December 6, 1979 or thereabouts, the defendant's third attorney in the case did not file his appearance in the Superior Court until April 14, 1980, the day set for trial of the instant criminal complaint. After receiving the information that the defendant had asked his attorney to withdraw, the Court and Stinson had the following colloquy, which is reproduced in pertinent part:

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Darrell Nichols, Law Student Intern (orally), Portland, for plaintiff.

Farrell & Brunette, Ricky L. Brunette (orally), Portland, for defendant.

1. 17–A M.R.S.A. § 806. *Criminal mischief*

   *1.* A person is guilty of criminal mischief if, intentionally or knowingly, he:

   *A.* Damages or destroys the property of another, having no reasonable ground to believe that he has a right to do so; or damages or destroys property to enable any person to collect insurance proceeds for the loss caused; or

2. Similar successive requests to withdraw from two of the defendant's previous attorneys at the District Court level were successful on motion.

"The Court: All right, I'm telling you. It's my understanding you wish to discharge this attorney? I have just made inquiry out in the criminal department as to ... regarding the possible appointment of another attorney. It's not possible at this point. You have had a jury panel impaneled—picked, and it's going. Your case has to be tried now.

"Mr. Stinson: But your Honor, *I feel my attorney is not fully prepared in this matter* either.

"The Court: That I don't know anything about, that is a matter you have to take up with your attorney. In any event, at this point I'm not permitting Mr. _____ to withdraw as your counsel. The rules do not permit it, you have a jury panel that has been selected for trial. We cannot discharge that panel; that panel has to remain because of so-called double jeopardy which applies whenever a jury has been impaneled and sworn. Prior to that time continuances might be in order for various reasons, they are not thereon. So, if you have any question in mind about going forward to trial, at this point—

"Mr. Stinson: Yes, I do, your Honor.

"The Court: What basis?

"Mr. Stinson: *I still feel I would rather have better representation.*

"The Court: That is something that you should have been deciding long before today." (Emphasis added)

The trial then proceeded with the attorneys for the State and the defendant making their opening remarks to the jury. The trial Justice at that point gave the jury cautionary instructions concerning their conduct during their absence from the courthouse and declared a recess at 4:17 p. m., continuing the case to the following morning at 9:30 a. m., April 15, 1980, at which time, when the parties were asked by the Court if they were ready to proceed, the defendant's attorney responded:

*"The defendant is ready."* (Emphasis added)

The State called two witnesses and Stinson elected to testify. The defendant's counsel conducted the entire defense and no further objection or comment was made either by counsel or the defendant personally respecting Stinson's alleged claim of the previous day that his counsel was inadequately prepared for trial.

### 1.

### A

■ Although articulated in euphemistic terms of *feeling* his attorney was not fully prepared to try his case, the defendant contends that his representation to the trial Justice was sufficient to trigger a duty on the part of the court to make inquiry into the particulars of the stated charge, and, since the court failed to do so, there was reversible error, even in the absence of a showing of actual prejudice. No authority has been cited for such a *per se* rule and we are not about to adopt the defendant's contention.

The defendant rests this alleged claim of reversible error on the decision of the United States Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), where the suggested rule was formulated to meet unique risks to sixth amendment rights generated by counsel representation of multiple criminal defendants. But joint representation of conflicting interests, insofar as constitutional adequacy of counsel representation of criminal defendants is concerned, is in itself potentially suspect, because of what it tends to prevent the attorney from doing, or to compel him to refrain from doing, not only at trial, but at other stages of the trial process such as in possible pretrial plea negotiations or in the sentencing procedure. *Holloway, supra*, 435 U.S. at 489–90, 98 S.Ct. at 1181-82.[3] The pretrial problems

---

**3.** Notice should be taken of footnote 7 at page 1022, of *State v. Elwell*, Me., 380 A.2d 1016 (1977), where this Court said:

The same attorney should not be appointed or permitted to represent codefendants unless the court has made inquiry on the record and is satisfied that there is no reasonable probability of conflict of interest arising by reason of such joint representation. Such finding by the appointing justice should also appear on the record. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

associated with identifying and curing conflict of interest in counsel representation of multiple criminal defendants are simply not comparable to the problems raised by the prospect of an attorney's inadequate preparation for trial. Hence, we decline to extend the special rule of *Holloway* to this phase of the instant case.

### B

The right to counsel guaranteed by the Sixth Amendment is a fundamental right. *Argersinger v. Hamlin*, 407 U.S. 25, 29–33, 92 S.Ct. 2006, 2008–10, 32 L.Ed.2d 530 (1972). And this constitutional right made applicable to the States through the Fourteenth Amendment means that the States cannot sanction conducting trials at which persons who face incarceration must defend themselves without adequate legal assistance. The constitutional mandate of adequate legal representation to criminal defendants applies, whether counsel is appointed or retained. *Cuyler v. Sullivan*, 446 U.S. 335, at 342–345, 100 S.Ct. 1708, at 1715–16, 64 L.Ed.2d 333, at 343–44 (1980). *See State v. Sinclair*, Me., 236 A.2d 66 (1967) ([a]n indigent accused is entitled to 'effective representation').

Stinson claims that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment, because, as he represented to the trial Justice, he felt his appointed counsel was not fully prepared to try the case and that he would rather have better representation. No one disputes the fact that adequate preparation for trial on the part of counsel is conducive to bringing about that effective trial representation to which all criminal defendants are entitled. But the defendant's mere statement to the trial court to the effect that his attorney was not fully prepared to proceed, without comment from counsel, does not establish in and of itself that the ensuing trial did in fact deny the defendant his constitutional right of adequate counsel representation, nor did the failure of the court to probe the details of the defendant's complaint automatically make out a case of abuse of judicial discretion. In *State v. Simmonds*, Me., 313 A.2d 120 (1973), a similar disclosure to the court by trial counsel prior to the commencement of trial caused this Court to say:

> "it fails to follow that in each and every situation counsel's representation that he considers himself inadequately prepared per se establishes that the denial of a continuance, in the face of such expressed 'opinion', is automatically an abuse of judicial discretion."

*See also Commonwealth v. LaFleur*, 1 Mass. App. 327, 296 N.E.2d 517 (1973).

Furthermore, counsel representing a defendant in a criminal case is in the best position professionally and under his obligations to his client and to the court as an officer thereof seasonably to make an informed determination on the adequacy of his trial preparation, and, when he is in fact inadequately prepared to proceed with the case, it is his duty so to advise the court. His declarations to the court should carry more persuasiveness than the mere statements of the criminal defendant himself who oftentimes will take refuge in such an excuse merely to seek postponement of the inevitable day of reckoning before the court of justice. The court's dismissal of defendant's bare statement of unpreparedness for trial, in the face of counsel's failure to actively support such a claim, without further inquiry into the matter, falls far short of proving judicial abuse of discretion. *See Holloway, supra*, 435 U.S. at 485–86, 98 S.Ct. 1179.

### C

If Stinson's present claim that he was not provided with effective assistance of counsel at trial because of unjustified unpreparedness of his attorney is intended to predicate constitutional infirmity in the judgment of conviction on the ground of incompetency of his trial counsel, then, this alleged point raised on direct appeal is not cognizable by us, but, as is generally the case, must await consideration in collateral

post-conviction proceedings. *See State v. Simmonds, supra,* at 124–25; *State v. Le-Blanc,* Me., 290 A.2d 193, 202 (1972).

### D

■ The defendant argues that his express complaint to the trial Justice of his attorney's alleged unpreparedness for trial should have gotten him a continuance of the case to allow sufficient time for effective substitution of counsel and the court's failure to do so was reversible error. We disagree. It is obvious from the defendant's colloquy with the court that Stinson, for undisclosed reasons, manifested dissatisfaction with his trial counsel and wanted another attorney to be appointed to defend him. Considering the defendant's discharge of his two previous attorneys, the substantial amount of the time trial counsel had had to prepare for trial, the nature of the criminal charge being defended and the fact that a jury had already been impaneled and sworn, we cannot see from this record any abuse of discretion on the part of the trial Justice in denying the defendant's request.

■ Whether or not a continuance will be granted on the ground that counsel had insufficient time to prepare for trial or that more time was required to obtain adequate legal representation at trial in a given case rests entirely within the sound discretion of the presiding trial justice. *State v. Harding,* Me., 392 A.2d 538, 540 (1978); *State v. Curtis,* Me., 295 A.2d 252, 254 (1972); *State v. Wardwell,* 158 Me. 307, 310, 183 A.2d 896, 898–99 (1962). The burden of showing such an abuse of discretion is upon the party alleging the abuse, here upon the defendant-appellant. *State v. Carey,* Me., 303 A.2d 446, 449 (1973). And, an abuse of discretion warranting reversal only arises if "palpable error" or "apparent injustice" is made to appear. *State v. Hume,* 146 Me. 129, 134, 78 A.2d 496, 500 (1951).

The record in the instant case disproves any palpable error or apparent injustice, but rather affirmatively supports effective assistance of counsel at trial. As stated by counsel on the following morning at which time the case had been continued for the reception of evidence, the defendant was ready for trial and the transcript of the proceedings in no way reflects the work of an unprepared defense attorney.

■ Furthermore, the fact that the request for substitution of counsel comes after commencement of trial as in the instant case is an additional factor for consideration by the trial justice in his exercise of discretion in determining whether a continuance should be granted. *See Johnson v. State,* 44 Md.App. 515, 411 A.2d 118 (1980); *Morgan v. State,* Ind.App., 397 N.E.2d 299 (1979); *United States v. Price,* 9th Cir., 474 F.2d 1223 (1973).

### E

In addition, Stinson claims that his personal communication to the trial Justice that he felt his appointed counsel was unprepared to proceed with the trial and that he desired better representation should have been understood by the court as the assertion of his constitutional right of self-representation. Again, we disagree.

■ We do concede that a defendant in a criminal case does have an independent constitutional right to conduct his own defense and act as his own attorney without the assistance of legal counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See also State v. Currier,* Me., 409 A.2d 241, 243 (1979).

■ But, the court in a criminal case has no duty to advise the defendant of his constitutional right that he may act as his own attorney without legal representation, absent a prior request by the defendant or his legal counsel that the defendant wishes to exercise the privilege. *State v. Gregory,* Mo.App., 595 S.W.2d 798, 800 (1980); *People v. Salazar,* 74 Cal.App.3d 875, 141 Cal.Rptr. 753, 761 (1977).

■ The demand for self-representation, however, must be stated unequivocally. *State v. Fritz,* 21 Wash.App. 354, 585 P.2d 173, 177 (1978); *Chapman v. United States,* 5th Cir., 553 F.2d 886, 892 (1977);

*People v. Windham*, 19 Cal.3d 121, 128–29, 137 Cal.Rptr. 8, 12, 560 P.2d 1187, 1191 (1977).

■ A defendant's request that his counsel withdraw and that another attorney be appointed in his place, as was the situation in the instant case, does not constitute a demand to proceed pro se. *State v. Garcia*, 92 Wash.2d 647, 600 P.2d 1010, 1015 (1979); *People v. Potter*, 77 Cal.App.3d 45, 143 Cal.Rptr. 379, 381–82 (1978); *Perry v. United States*, 364 A.2d 617, 620 (D.C.App. 1976).

We do conclude that the defendant's claims of error in the conduct of his trial which led to his conviction of the offense of criminal mischief are without merit.

### 2.

### A

Assuming the validity of his conviction, Stinson raises, as his final point on appeal, the argument that there was error in the sentencing process rendering the order of restitution as a condition of probation null and void. He contends that the order of restitution, as in *State v. Blanchard*, Me., 409 A.2d 229 (1979), should be stricken from the sentence imposed upon him.

After verdict and prior to imposition of sentence, the presiding Justice inquired, pursuant to Rule 32(a), M.R.Crim.P., whether the defendant or his counsel wished to be heard. In his address to the Court, counsel pleaded that this was the defendant's first conviction, that a jail sentence would be inappropriate, and, if a jail sentence were given, that its execution should be delayed for a week to permit Stinson to get his affairs in order. On the Court's further inquiry, the defendant personally substantiated his need for the one-week reprieve by informing the Justice that

"I live alone, I have my home which needs to be secured, and what not; my animals have to be taken care of and various things like that."

The record indicates that, without the benefit of a pre-sentence investigation and report by the State Board of Probation and Parole, pursuant to Rule 32(c)(1), M.R. Crim.P., the presiding Justice in open court orally apprised the defendant of the sentence he was imposing in the following manner:

"The Court does hereby sentence you upon the conviction of criminal mischief to six months in the Cumberland County Jail, I suspend all but 30 days, placing you on probation for one year, conditions of probation that you make restitution to the Central Maine Power Company *in accordance with the amount that is determined through the Probation and Parole Department, that restitution to be made within a period of ten months*.

Stay of execution until Friday the 25th of April at 9:00 o'clock in the forenoon. Bail as set will continue until that day.

You are free to go." (Emphasis added)

The written judgment, order of commitment, together with the conditions of probation, signed by the presiding Justice, of even date with the orally stated sentence, purported to carry out the previously ordained punishment, except that the special condition of probation was summarized to read:

"Restitution to be made in the first 10 months as determined by Probation and Parole Department."

At no time did Stinson advise the presiding Justice that the monetary restitution ordered to be made within a period of ten months would create for him an excessive financial hardship.

For the first time on appeal, the defendant asserts illegality in the sentencing process, based (1) on the alleged failure of the presiding Justice to take into consideration the financial ability of the defendant to pay restitution, as provided in 17–A M.R.S.A. § 1325(1)(C) and (2)(D), and (2) on the fact that the order of restitution left the amount of reimbursement to be determined by the Probation and Parole Department.

■ Even though Rule 32(b) requires a written judgment setting forth, among other things, the sentence imposed by the court, the orally pronounced sentence is *the* sentence, while the judgment is merely

written evidence of the sentence. Where there is discrepancy between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement of sentence controls. *State v. Bradley*, Me., 414 A.2d 1236, 1241 (1980); *Cuozzo v. United States*, 5th Cir., 340 F.2d 303 (1965). Glassman, 3 Maine Practice, § 32.8, at page 256. Hence, the defendant's suggestion that there was error in not directing to whom restitution be made is *without merit*, since the court's oral pronouncement expressly mandated reimbursement to be made to the Central Maine Power Company.

■■■■■ Failure of the written judgment to reflect the several steps taken by the court during the course of determining the prospective sentence and its pronouncement does not nullify steps which did in fact occur. It is the process actually employed which determines the legality of a conviction and not a failure of the judgment fully and accurately to recite the true facts. The complete record of the court may be had to interpret or supplement the judgment. *See Fuller v. State*, Me., 282 A.2d 848 (1971); *Sanders v. Johnston*, 9th Cir., 165 F.2d 736 (1948).

We do recognize that the power of the courts to grant probation is *largely* statutory. *State v. Allen*, Me., 235 A.2d 529, 530 (1967); *State v. Farmer*, Me., 324 A.2d 739, 745 (1974).

■■■■■ But, as we said in *State v. Blanchard*, Me., 409 A.2d 229 at 238 (1979) the sentencing justice lacks authority to include an order of restitution in the sentence, unless as a precondition thereto he takes into consideration the financial ability of the offender to pay restitution. 17–A M.R.S.A. § 1325.[4] It is true that the presiding Justice in the instant case did not conduct an intensive probe into the financial condition of the defendant. He already knew from the defendant's own statement that Stinson lived alone and had his own home. From the evidence at trial, the approximate sum of money involved in the restitution order appeared to be in the vicinity of $106.00. The amount is not large and the time set for paying it, to wit, within ten months, is liberal. At the District Court level, counsel for the defendant indicated that Stinson had "substantial assets," which compelled the defendant to retain counsel. Even though counsel on appeal to this Court was appointed, the record discloses no express finding of indigency. In the face of the defendant's seeming satisfaction at the time of sentence that the restitution order was within reasonable tolerance of his financial ability to pay, we cannot say as a matter of law that the presiding Justice, under the circumstances of the instant case, in making his determination did not sufficiently consider the financial ability of the offender to pay restitution by failing to probe more fully into the several stated statutory factors delineated for a proper resolution of the sentencing process.

We conclude that the record, in connection with the point at issue, fails to establish as a matter of law—*i. e.*, so plainly as

---

4. 17–A M.R.S.A. § 1325 provides in pertinent part as follows:

§ 1325. *Criteria for restitution*

  *1. Restitution authorized.* Restitution may be authorized, in whole or in part, as compensation for economic loss. In determining the amount of restitution authorized, the following shall be considered:

  .    .    .    .    .

  *C.* The financial ability of the offender to pay restitution.

  *2. Restitution not authorized.* Restitution shall not be authorized:

  .    .    .    .    .

  *D.* When the amount and method of payment of monetary restitution . . . . will create an excessive financial hardship on the offender or dependent of the offender. In making this determination, all relevant factors shall be considered, including, but not limited to the following:

  (*1*) The number of the offender's dependents;

  (*2*) The usual living expenses of the offender and his dependents;

  (*3*) The special needs of the offender and his dependents, including necessary travel expenses to and from work;

  (*4*) The offender's income and potential earning capacity; and

  (*5*) The offender's resources.

to foreclose rational disagreement—that the presiding Justice, under all the circumstances disclosed in the instant case, did not take into consideration, in determining to impose the restitution order, the tolerability thereof within Stinson's capacity to pay. *See State v. Parker*, Me., 372 A.2d 570 (1977).

## B

Stinson further contends that it was error on the part of the presiding Justice to leave the amount of the monetary restitution to the discretion of the Probation and Parole Department. The oral pronouncement respecting the reimbursement order was

> "that you make restitution to the Central Maine Power Company in accordance with the amount that is determined through the Probation and Parole Department, that restitution to be made within a period of ten months."

A rational interpretation of the language used by the presiding Justice does not purport to give any discretion in the matter to the Department. Rather, the agency is mandated to ascertain the exact amount of the value loss to the Central Maine Power Company, which up to the time of sentencing was only evidenced in estimate form. This factual determination, under the circumstances of the instant case, does not call for the exercise of any discretion.

The entry will be:

Appeal denied.

Judgment of conviction affirmed.

All concurring.