**STATE of Maine**

v.

**Jean W. LEMIEUX.**

Supreme Judicial Court of Maine.

Argued May 23, 1991.

Decided Dec. 27, 1991.

David W. Crook, Dist. Atty., Alan Kelley (orally), M. Michaela Murphy, Asst. Dist. Attys., Augusta, for the State.

Ronald Bishop (orally), Levine & Bishop, Waterville, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

On his guilty plea to aggravated assault, 17–A M.R.S.A. § 208 (Class B) (1983),[1] the Superior Court (Kennebec County, *Brody, C.J.*) sentenced defendant Jean W. Lemieux to 8 years imprisonment with all but 5 years suspended, and probation for a period of 6 years conditioned *inter alia* upon restitution in an amount not to exceed $10,-000. We find no error in the sentence except that the term of probation exceeded the statutory maximum of 4 years[2] and that the order for restitution was inadequately supported by the information made available to the court.

On January 21, 1989, at about 2:30 p.m., defendant's automobile struck and seriously injured a pedestrian, Frank Staples, as he was crossing Front Street in Waterville. Staples landed on the sidewalk about 20 feet from where he was struck. Defendant and a number of eyewitnesses stopped their vehicles and a police officer arrived within minutes. When asked by the police officer what had happened, defendant said that Staples had stepped into the street ahead of his car. The officer smelled alcohol on defendant's breath, administered a field sobriety test which defendant failed, and arrested defendant for operating under the influence. Later, at the police station, a breath test showed defendant had a blood-alcohol level of 0.19%. Defendant admitted to having had a six-pack of beer the night before, two 16–ounce beers in the morning, and two more immediately before the accident.

Following his indictment, defendant pleaded guilty to aggravated operating under the influence and aggravated assault in

---

1. Defendant also pleaded guilty to aggravated operation of a motor vehicle under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B(1) & (2–A) (Class C) (Supp.1991), and received on that charge a concurrent sentence of 2 years imprisonment, a fine of $500, and 5 years suspension of his driver's license. That sentence is affirmed in full.

2. The length of the probation period must be corrected to the statutory maximum of 4 years prescribed for the Class B offense of aggravated assault. *See* 17–A M.R.S.A. § 1202(1) (Supp. 1991).

exchange for the State's dismissal of a third charge of reckless conduct with a dangerous weapon. The court accepted the plea and ordered a standard presentence report. Defendant's license had been suspended for three years beginning in 1975 and for six months in 1982, each time following a conviction for operating under the influence. A substance abuse counselor evaluating defendant for the presentence report described defendant (aged 60 at the time of the offense) as an alcohol abuser, though not an alcoholic. While the presentence report was being prepared and nearly a year after the accident, defendant suffered a severe myocardial infarction. While treating defendant, his physician noticed an abnormal chest x-ray that suggested a malignancy. Due to defendant's poor health, the physician did not conduct a biopsy.

At the sentencing hearing, defendant's attorney requested that defendant serve his sentence for the Class B aggravated assault on intensive supervision. The State argued for a 10–year sentence with all but 5 years suspended, followed by a period of probation. While acknowledging defendant was unlikely to have the means to pay, the prosecutor also requested restitution. In imposing sentence, the court considered defendant's prior convictions for operating under the influence, the negligible deterrent effect those convictions had had, defendant's prospects for rehabilitation, and the threat that he posed to public safety, and sentenced defendant to 8 years with all but 5 suspended, the final 18 months to be served on intensive supervision and to be followed by a 6–year period of probation.[3] As a condition of intensive supervision and probation, the court ordered that defendant pay restitution not to exceed $10,000.

## I.

Defendant contends that the court failed to give due consideration to his lack of a prior criminal record, age, and ill health or to the recommendation of the probation officer who prepared the presentence report. After reviewing for misapplication of principle the court's determination of the basic sentence warranted by the nature and seriousness of the offense, see State v. Lewis, 590 A.2d 149, 150 (Me.1991), and for abuse of discretion the court's weighing of aggravating and mitigating factors, see State v. Weir, 600 A.2d 1105, 1106–1107 (Me.1991), we find no error in the sentence imposed on Lemieux.

In setting an 8–year basic sentence for the Class B offense committed by Lemieux, the court properly considered the relevant sentencing principles set forth by the Legislature in 17–A M.R.S.A. § 1151 (1983 & Supp.1991). Lemieux's offense was a very serious one. Driving in broad daylight and with a blood-alcohol level of 0.19%, he hit an older gentleman who was crossing a downtown Waterville street in a marked crosswalk and who was plainly visible to motorists approaching the intersection. The victim's injuries were very severe, requiring surgical reconstruction and causing the victim continuous pain.

 After setting the basic sentence "the court [should] apply its discretion to determine the degree of mitigation called for by the circumstances of the offender and the degree of aggravation indicated by specific factors demonstrating a high risk of re-offending." State v. Weir, 600 A.2d at 1106. "[W]e accord the sentencing court great deference in weighing these factors in order that it may appropriately individualize each sentence." Id.

 By suspending only 3 years of Lemieux's 8–year sentence for aggravated assault and by ordering him incarcerated for 3½ years of the unsuspended portion of that sentence, the court acted well within its discretion in applying sentencing principles. The court was required to consider that the actual time defendant will serve in prison will be substantially less than 3½ years, by reason of the statutory provisions allowing credit for good-time. See 17–A

---

**3.** See n. 2 above.

M.R.S.A. § 1252–B (Supp.1991).[4] Although defendant's age and health were factors in favor of less prison time or a sentence served only on intensive supervision, there were several counterbalancing aggravating factors. Lemieux's license had twice been suspended for operating under the influence; yet by his own admission he continued to drink regularly. The court assessed Lemieux's prospect for rehabilitation and found it poor, in part because of his poor health. He had no steady job or permanent residence, and lacked other sources of stability that increase the chances of rehabilitation. Balancing the threat to public safety against Lemieux's health and age, the court determined that he would continue to be a threat even if physically impaired. Because the court "is accorded wide discretion when determining what sources and types of information [it] will consider when imposing sentence," *see State v. Rosa*, 575 A.2d 727, 730 (Me.1990), it was free to reject the probation officer's recommendation that the entire sentence be served on intensive supervision. *See State v. Rolerson*, 593 A.2d 220, 223 n. 3 (Me.1991).

## II.

■ On appeal Lemieux also challenges the court's order that he pay restitution not to exceed $10,000 as a condition of intensive supervision and probation. One of the purposes of the restitution statute, 17–A M.R.S.A. §§ 1321–1330 (1983 & Supp.1991), is "to encourage the compensation of victims by the person most responsible for the loss incurred by the victim, the offender." *Id.* § 1321. The restitution statute authorizes the sentencing court to order an offender to make monetary reimbursement for a victim's economic loss, *see id.* § 1322(6)(A), except when the victim "has otherwise been compensated from a collateral source...." *Id.* § 1325(2)(C). Although a court may leave the exact determination of the victim's actual losses to the Department of Probation, *see State v. Stin-*

*son*, 424 A.2d 327, 335 (Me.1981), that is not what the present sentence does. Here the court sentenced defendant to pay restitution "not to exceed $10,000." In contrast to the sentence imposed in *Stinson*, this sentence purports to find the victim's economic losses to be at least $10,000, leaving to the probation officer only the discretion to determine when defendant should be required to pay.

■ The court having complied with the directive of 17–A M.R.S.A. § 1323 to "inquire of a prosecutor ... with respect to the extent of the victim's financial loss," the prosecutor who requested the restitution order should have responded with an adequate factual foundation for setting the amount of the victim's economic loss. All that the sentencing court had before it to show that the victim had compensable economic losses were the victim's medical records. Although those records documented the victim's serious injuries, they did not provide the court with a basis from which to infer that the victim had compensable losses beyond his recovery from collateral sources, whether in the amount of $10,000 or any other sum. That information in some reliable form was essential to support an order of restitution.

Moreover, the material presented to the court at the sentencing hearing fell short of showing the "financial ability of the offender to pay restitution," a consideration required by the restitution statute. 17–A M.R.S.A. § 1325(1)(C). The statute goes on to provide that: "Restitution shall not be authorized ... [w]hen the amount and method of payment of monetary restitution or the performance of service restitution will create an excessive financial hardship on the offender...." *Id.* § 1325(2)(D). Along with other relevant factors, the statute specifically directs the court to consider "[t]he offender's income and potential earning capacity" and "[t]he

---

4. For a sentence of more than 6 months, the good-time provisions allow a deduction from time served of 10 days per month, deducted as of the first day of imprisonment. *See* 17–A M.R.S.A. § 1253(3) (Supp.1991). Up to 5 additional days per month may be deducted from the sentence of an offender who is participating in various correctional programs. *See id.* § 1253(4) & (5) (Supp.1991).

offender's resources." *Id.* § 1325(2)(D)(4) & (5).

 If the requirement that a restitution order reflect a defendant's ability to pay is to have any substance, the State should not seek, nor should a sentencing court impose, restitution upon the mere speculation that the offender will be able to comply with a restitution order at some time in the future. Rather, a restitution order, even one to be complied with in the future "to the satisfaction of the probation officer," as this one, must reflect consideration of an offender's present financial circumstances and his realistic earning potential. *See State v. Murphy,* 431 A.2d 58, 59 (Me.1981). In requesting a restitution order against Lemeiux the State made no showing that he had the means with which to pay restitution as a condition of probation or that he was likely to earn the money with which to do so while in prison or thereafter. He had had income of $11,248 in 1988 and $12,435 in 1987, but by the time of the sentencing he had no assets. His deteriorated health prevented him from working. At sentencing, the prosecutor conceded that it was unlikely that Lemieux could ever pay restitution but nonetheless requested it for "symbolic" reasons. Symbolism, however, in the absence of any realistic prospect that the defendant will ever have the ability to pay, cannot justify ordering restitution. A symbolic restitution order that has no chance of ever being paid serves to delude both the victim and the public, but in fact accomplishes nothing.

Rather than modifying the sentence to strike the inadequately supported restitution order, we are required by P.L.1991, ch. 525, § 4 (eff. June 30, 1991) (enacting 15 M.R.S.A. § 2156(1–A), to "remand the case to the court that imposed the sentence for ... further proceedings that could have been conducted prior to the imposition of the sentence under review and for resentencing on the basis of such further proceedings...."[5]

---

**5.** As an enactment amending a procedural statute, P.L.1991, ch. 525 (eff. June 30, 1991), 15 M.R.S.A. § 2156(1–A) (Supp.1991), "presumptively applies to pending proceedings...." *Schlear v. Fiber Materials, Inc.,* 574 A.2d 876, 878 (Me.1990).

The entry is:

Sentence for aggravated operation of a motor vehicle under the influence affirmed. Sentence for aggravated assault vacated and remanded for proceedings consistent with the opinion herein.

All concurring.