## STATE of Maine

### v.

## Charles O. CHATTLEY, Jr.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 2, 1994.
Decided Dec. 9, 1994.

Michael E. Povich, Dist. Atty., Ellsworth, for the State.

Douglas Chapman, Fenton, Chapman, Fenton, Smith & Kane, P.A., Bar Harbor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

Charles O. Chattley, Jr. (Chattley) appeals from the judgment entered in the Superior Court (Hancock County, *Kravchuk, J.*) requiring him to pay $7200 restitution in monthly installments of $150 to Alonzo Wentworth (Wentworth), the victim of Chattley's aggravated assault. *See* 17–A M.R.S.A. § 208 (1983). Chattley contends he cannot pay this judgment from his own income and that the judgment requires his family to pay the ordered restitution in contravention of the restitution statute, 17–A M.R.S.A. § 1321 (1983). We disagree. The trial court carefully considered the statute in determining Chattley's ability to pay. We affirm the judgment ordering restitution.

Following acceptance of Chattley's nolo contendere plea to aggravated assault, the Superior Court held a sentencing hearing to determine Chattley's ability to pay restitution. Chattley lives on property he conveyed to his wife, Edna, and his adult daughter approximately one week after the assault. Chattley's adult son, Charles Chattley III (Charles III), lives rent-free in a mobile home on this property. Chattley testified that the only thing he owns is a 1982 red Dodge pickup truck, that he has not worked in the past ten years due to chronic back pain, and that his only income is a monthly SSI check. Edna's household budget revealed income of $302 per month from AFDC, $200 per month in rent from a couple residing in one of the mobile homes on the real estate conveyed by Chattley, and Chattley's SSI check of $452 per month.

The State presented evidence pertaining to a wood-cutting business advertised in the *Ellsworth–American.* The ad listed Chattley's home phone number. Chattley testified that no business operated from his home, but that Charles III "has worked in a little bit of wood and that's how he gets by." Wentworth testified that he had seen Chattley cutting wood as recently as one week before the hearing, and that Chattley has contributed to the business on a number of occasions. Chattley denied this.

Wentworth testified that the assault resulted in lost wages and medical expenses of approximately $30,000. The trial court ordered Chattley to pay $7200 restitution in monthly installments of $150. In so ruling, the court noted that Chattley had only recently begun receiving SSI and that the family had apparently enjoyed the same standard of living prior to its receipt. The court also took note of the wood business, and of the fact that Charles III lived on the property rent-free.

■ We review the validity of a sentence only to determine "whether an illegal sentence was imposed." *State v. Hudson,* 470 A.2d 786, 787 (Me.1984). "A sentence is cognizable on direct appeal only if it appears of record so plainly as to preclude rational disagreement that it was beyond the sentencing authority of the court." *Id.*

Chattley argues that the court's order improperly "pooled" the income of the "family unit," thus resting the burden of paying restitution on his family, that it improperly considered the wood business in determining his ability to pay, that it improperly speculated about Charles III's ability to contribute income, and that the order was fashioned more for compensatory than for rehabilitative purposes. We answer all of Chattley's arguments by noting the court's application of the restitution statute to the evidence.

■ The statute requires the court to consider the offender's financial ability to pay. 17–A M.R.S.A. § 1325(1)(C) (1983). It prohibits the court from ordering restitution if such an order would impose an excessive hardship. § 1325(2)(D). To determine whether an order would impose a hardship,

the court may consider "all relevant factors, including but not limited to" the living expenses of the offender and his dependents, § 1325(2)(D)(2), the offender's income and potential earning capacity, § 1325(2)(D)(4), and the offender's resources, § 1325(2)(D)(5).

The sentencing court considered the income and resources of both Chattley and his family as a whole to determine whether Chattley would suffer hardship were Chattley ordered to expend a portion of his social security benefit. This approach was necessary because of the evidence that the family members pooled their resources and that the family members had supported Chattley for a substantial period of time. *See State v. O'Donnell,* 495 A.2d 798 (Me.1985) (upholding the trial court's consideration of not only the defendant's willingness to pay, but also the number of dependents and his wife's employment to determine an appropriate amount). Based on the evidence presented, the conclusion that Chattley had the financial ability to pay $150 per month without excessive hardship to him or his family was not beyond the authority of the sentencing court.

Nor was it beyond the court's authority to consider the wood business a potential source of income or one of Chattley's resources. Evidence suggested the existence of an ongoing wood-cutting business. Evidence suggested that Charles III operated this business at least in part from Chattley's home. Finally, evidence suggested that Chattley had contributed to this wood business in the course of the past ten years.

The sentencing court did not speculate as to Charles III's ability to contribute income to Chattley or his family. The evidence permitted the court to consider the wood business and rent from the mobile home as potential sources of income. This is not the kind of speculative or symbolic restitution order we vacated in *State v. Lemieux,* 600 A.2d 1099, 1103 (Me.1991).

The entry is:

Judgment affirmed.

All concurring.