**STATE of Maine**

**v.**

**Marlon CLOUTIER.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1993.

Decided Aug. 19, 1994.

CLIFFORD, Justice.

Defendant Marlon Cloutier appeals from sentences imposed by the Superior Court (Kennebec County, *Alexander, J.*) on six counts of arson, 17–A M.R.S.A. § 802 (1983 & Supp.1993), one count of burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1993), and one count of theft, 17–A M.R.S.A. § 353 (1983). Because the requirement of restitution was improperly imposed on Cloutier, and because the sentences imposed were excessive, we vacate the sentences.

On the night of June 14, 1992, Cloutier, along with two codefendants, all of whom had been drinking heavily, set fire to a Central Maine Power Company high-voltage utility pole in Augusta by placing brush, tires, rubbish, and debris around the base of the pole and setting the material on fire. They then proceeded to drive to the Belgrade area where they set fire to three barns on three different properties, and to a residence. When the car they were using ran out of gas in Belgrade, they entered a garage and siphoned gasoline from a pick-up truck to replenish their fuel.

The fires appear to have been random acts, with no apparent motive. At one site, when the fire they set failed to burn, they went back to reset it. The fires caused considerable damage and required firefighters from thirteen fire departments to fight the blazes. A home, several buildings, farm equipment, and some animals were either destroyed or damaged. Previously, on April 23, 1992, Cloutier, acting alone, had set fire to a vacant apartment building in Augusta.

Cloutier entered pleas of guilty to four of the counts of arson committed on June 14, and to the burglary and theft counts. He entered pleas of *nolo contendere* to setting fire to the utility pole and to the April arson. *See* M.R.Crim. P. 11. Cloutier's pleas were entered in conjunction with a plea agreement pursuant to M.R.Crim.P. 11A. The State recommended to the court a maximum sentence of forty years, with all but twenty years suspended, ten years' probation, and

David W. Crook, Dist. Atty., Paul Rucha (orally), Asst. Dist. Atty., Augusta, for the State.

Ronald W. Bourget (orally), Bourget & Bourget, P.A., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ., and COLLINS, A.R.J.*

* Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

restitution to the victims. Cloutier was free to and did argue for a lesser sentence.

For each of the five counts of arson committed on June 14, the court sentenced Cloutier to concurrent sentences of forty years, suspending all but twenty years, followed by six years' probation, and imposed concurrent sentences of five years for the burglary conviction, and six months for the theft. For the one count of arson stemming from the April fire, Cloutier received a sentence of forty years *consecutive* to the other sentences, all suspended, with a four-year probation period. As part of the final sentences, and as a condition of probation, the court required Cloutier to pay restitution to the victims in an amount of $126,148.98, with the schedule of payments left to the probation officer. Following the denial of Cloutier's motion to correct or reduce his sentence, he was granted leave to appeal his sentence. *See* 15 M.R.S.A. §§ 2151, 2152 (Supp.1993); M.R.Crim.P. 40.

## I. Restitution

■ Restitution to benefit the victims of criminal activities is one of the general purposes of sentencing. *See* 17–A M.R.S.A. § 1151(2) (1983). Section 1323 of 17–A M.R.S.A. requires the court to "order restitution where appropriate," and to state the reason for its failure to do so. 17–A M.R.S.A. §§ 1323(1)–(2) (Supp.1993). Restitution cannot be ordered, however, when it would impose "an excessive financial hardship on the offender or dependent of the offender." 17–A M.R.S.A. § 1325(2)(D) (1983). Before ordering restitution, a court must make a finding that the offender has or

will have the ability to comply with the order. *State v. Webber,* 613 A.2d 375, 378 (Me.1992); *see State v. Lemieux,* 600 A.2d 1099, 1103 (Me.1991) (courts not to impose restitution unless defendant's present financial circumstances and realistic earning potential indicate that he will be able to meet the obligation); *see also State v. Stinson,* 424 A.2d 327, 334 (Me.1981); *State v. Blanchard,* 409 A.2d 229, 238–39 (Me.1979). In order to make such a finding, the court must consider several factors, including the defendant's income and resources. 17–A M.R.S.A. §§ 1325(2)(D)(4)–(5) (1983). In addition, the court must specify the time period and method of payment. 17–A M.R.S.A. § 1326 (Supp.1993).[1]

■ In the circumstances of this case, we agree with Cloutier that restitution was improperly imposed. Although Cloutier has a work history and has been able to hold more than one job at a time, these factors alone do not justify a finding that Cloutier will realistically have the earning potential to pay in excess of $126,000.[2] *See Lemieux,* 600 A.2d at 1103. Not only did the court fail to make an express finding of ability to pay, but it indicated that the prospects for collection of restitution were small. This was in accord with the State's comment that there was little likelihood that a "nickel" of restitution would be collected. Although restitution orders can be fashioned to reflect the actual resources and realistic future earning capacity of a defendant, and at the same time insure that a victim is compensated to the maximum extent possible,[3] the restitution amount in this case was excessive.

1. Although the *extent* of the court's inquiry may be lessened if the amount of restitution is small and is agreed to by a defendant in conjunction with a plea agreement, *see State v. Dragon,* 521 A.2d 704, 706 (Me.1987); *State v. Stinson,* 424 A.2d 327, 334 (Me.1981), the court is not relieved of its responsibility to insure that the defendant has or will have the ability to comply with the order, especially when, as in this case, the amount of restitution ordered is such a substantial sum.

2. Although Cloutier's codefendants may also be jointly responsible for the $126,148.98 in restitution, Cloutier is himself severally liable for the entire amount by the terms of the order.

3. For example, an order of restitution could be fashioned to provide that a defendant pay a specific amount of money on a weekly, monthly, or yearly basis, or a percentage of the defendant's income or assets, whichever is greater, in an amount not to exceed the full damage suffered by the victim. This allows for a larger amount of restitution to be paid if the defendant's income or assets substantially increase. *See Dragon,* 521 A.2d at 705 (specific amount of restitution ordered in the event that defendant became able to generate income pursuant to work-release).

## II. Excessiveness of Sentences

Cloutier contends that, even though he consented to the forty-year sentences in the plea agreement, such sentences are excessive, and that none of the individual arsons justify a sentence in excess of twenty years. In addition, Cloutier argues that the court erred in imposing a consecutive sentence for the April 23 arson.

■ We review sentences for misapplication of principle, scrutinizing the suspended portions of the sentences as well as that portion of the final sentence that is unsuspended. *State v. Hawkins,* 633 A.2d 78, 79 (Me.1993). *State v. Hewey,* 622 A.2d 1151 (Me.1993), decided after the court sentenced Cloutier in this case, outlines the determinations that must be made by a sentencing court. 622 A.2d at 1154-55; *see also State v. Roberts,* 641 A.2d 177, 178-79 (Me.1994). As to each offense, the court must first determine the basic period of incarceration based solely on the nature and seriousness of the offense. *Hewey,* 622 A.2d at 1154. After deciding on the basic period of incarceration, the court should determine the maximum period of incarceration. *Id.* Finally, the court must consider whether to suspend all or a portion of the maximum period of incarceration and require a defendant to serve a period of time on probation. *Roberts,* 641 A.2d at 179; *Hewey,* 622 A.2d at 1155. In determining the maximum period of incarceration and the final sentence, all of the aggravating and mitigating circumstances peculiar to the defendant, including the need to protect the public, should be considered by the court. *Roberts,* 641 A.2d at 179; *see State v. Weir,* 600 A.2d 1105, 1106 (Me.1991).

■ Arson is a Class A crime. 17–A M.R.S.A. § 802(3) (1983). Except for those few Class A offenses that are among " 'the most serious and violent crimes that are committed against a person,' " *State v. Lewis,* 590 A.2d 149, 151 (Me.1991) (quoting the Statement of Fact attached to L.D. 2312, No. H–720 (113th Legis.1988)), for which a basic period of incarceration between twenty and forty years may be appropriate, the basic period of incarceration that may be imposed for a Class A crime may not exceed twenty years.[4] *Id.* None of the arsons committed in this case, even taking into account that those committed on June 14 were successive fires that affected the ability of the fire departments to combat each separate fire, greatly increasing the risk of death and destruction for each fire set, were committed against a person so as to justify basic periods of incarceration in excess of twenty years.

In determining what sentences within the twenty-year maximum are appropriate for these arsons, Cloutier's conduct must be compared on a scale of seriousness against all possible ways of committing arson. *See State v. Michaud,* 590 A.2d 538, 542 (Me. 1991). The arsons committed on June 14, although they did not cause death or injury to any person, did destroy a residence and three barns, resulted in the destruction of animals, threatened other residences, and, in the case of the utility pole, threatened the supply of electricity to a large area. Consequently, the sentencing court would be justified in concluding that the basic period incarceration, at least for some of the arsons committed on June 14, should be at or near twenty years.[5]

4. The maximum period of incarceration cannot exceed twenty years unless a period in excess of twenty years can be justified as a basic period of incarceration. *State v. Hawkins,* 633 A.2d 78, 79 (Me.1993).

5. Cloutier also contends that the sentences must be vacated because they do not comport with the plea agreement he made with the State pursuant to which he entered his pleas of guilty and *nolo contendere.* The plea agreement provided for a total possible period of incarceration of forty years. The sentences imposed by the court, however, expose Cloutier to eighty years of incarceration, double the maximum period of incarceration set out in the agreement. The court did not specifically afford Cloutier the opportunity to withdraw his plea as required by M.R.Crim.P. 11A(e) when the court intends to impose a sentence less favorable to the defendant than recommended in the agreement; nor did Cloutier use the mechanism provided in Rule 11A(e) to seek to withdraw his plea. He did move to correct or reduce his sentence pursuant to M.R.Crim.P. 35, but failed to appeal from the denial of that motion. Such an appeal would be the appropriate procedural vehicle to bring the issue of compliance with a plea agreement before this court.

### III. Consecutive Sentences

 The sentencing court made one of the arson sentences consecutive to the other five sentences.[6] Sentences must be concurrent unless the court specifies that a sentence shall be consecutive. 17–A M.R.S.A. § 1256(2) (1983 & Supp.1993). Consecutive sentences may be imposed only in accordance with 17–A M.R.S.A. § 1256(2).[7] In order for the court to exercise its discretion to sentence consecutively, one or more of the factors set out in section 1256(2) must be present.

In this case, the convictions for the June arsons were based on different conduct, and the April fire was an offense arising from a different criminal episode. *See id.* at 1256(2)(A). Moreover, section 1256(2)(D) allows the sentencing court to consider the seriousness of the criminal conduct involved in multiple criminal episodes when considering whether to impose a sentence of imprisonment in excess of the maximum available for the most serious offense. *Id.* at 1256(2)(D). Making the sentences for one or more of the arson convictions consecutive would be within the sentencing court's discretion.[8]

The sentencing court's imposition of concurrent sentences of forty years for each of the June arsons and a consecutive sentence of forty years for the April fire was excessive. Consequently, the sentences must be vacated. Although we vacate the sentences, we note that, albeit in a different manner, the court could have imposed penalties against Cloutier equal or nearly equal to the penalties set out in the plea agreement pursuant to which Cloutier entered his pleas.

The entry is:

Sentences vacated. Remanded to the Superior Court for resentencing.

All concurring.

---

6. The court suspended the forty-year consecutive sentence in its entirety, and placed Cloutier on probation for four years for the stated purpose of subjecting him to a probationary period of 10 years, as opposed to the maximum six-year period for a Class A offense.

7. 17–A M.R.S.A. § 1256(2) (1983 & Supp.1993) provides:

> 2. In all other cases, the court shall state in the sentence of imprisonment whether a sentence shall be served concurrently with or consecutively to any other sentence previously imposed or to another sentence imposed on the same date. The sentences shall be concurrent unless, in considering the following factors, the court decides to impose sentences consecutively:
>
> A. That the convictions are for offenses based on different conduct or arising from different criminal episodes;
>
> B. That the defendant was under a previously imposed suspended or unsuspended sentence and was on probation, under incarceration or on a release program at the time the person committed a subsequent offense;
>
> C. That the defendant had been released on bail when that person committed a subsequent offense, either pending trial of a previously committed offense or pending the appeal of a previous conviction; or
>
> D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

8. We would caution, however, that consecutive sentencing, when considered in light of the maximum periods of incarceration imposed, may result in sentences being excessive. *See State v. Frechette,* 645 A.2d 1128, 1129 (Me.1994).