**STATE of Maine**

v.

**James CORRIERI.**

Supreme Judicial Court of Maine.

Argued Oct. 4, 1994.

Decided Feb. 7, 1995.

---

William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for the State.

David L. Brandt (orally), Windham, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

James Corrieri appeals from the judgment entered in the Superior Court (Somerset County, *Alexander, J.*) on jury verdicts convicting him of burglary while armed with a firearm, 17–A M.R.S.A. §§ 401(1), 401(2)(A) (1983), robbery, 17–A M.R.S.A. § 651 (1983), and criminal threatening with the use of a dangerous weapon, 17–A M.R.S.A. § 209 (1983), contending that evidentiary errors and prosecutorial misconduct prejudiced his right to a fair trial, and from the sentence imposed on him contending that it is excessive.[1] Finding no obvious error, we affirm the convictions; and finding no misapplication of principle in establishing the basic sentence and no abuse of discretion in the trial court's determination of the maximum period of incarceration and the final sen-

---

1. Pursuant to M.R.Crim.P. 40(b) and 15 M.R.S.A. §§ 2151–2157 (Supp.1993), leave to appeal the sentence was granted December 12, 1992.

tence, we affirm the sentences imposed on Corrieri.

Viewed in the light most favorable to the State, the testimony at the trial produced the following facts:[2] Corrieri drove Robert Lewis and Jack Danforth in Corrieri's car from Skowhegan to Madison to rob Nathan Weston, a man they suspected possessed marijuana. Hours later, after having difficulty finding their destination, they arrived at Weston's home.

Weston and two friends were sitting in his living room when Corrieri, Lewis and Danforth, armed with a gun, kicked open the door. Weston escaped out the front door. Corrieri and Lewis chased him while Danforth remained in the house with Weston's two friends. Meanwhile, a dog lunged at Danforth which prompted him to run from the house and fire his gun into the air. Corrieri, Lewis and Danforth fled the scene and were almost immediately apprehended by police.

Following a three day trial, the jury returned verdicts of guilty on all three counts on which Corrieri was charged. After the denial of his motion for a new trial or, in the alternative, a judgment of acquittal, Corrieri was sentenced to twenty years of incarceration, with all but twelve years suspended, followed by a probationary period of six years. This appeal on the underlying convictions and the sentence imposed followed.

### Use of the Juvenile Adjudication and Exclusion of Allegedly Exculpatory Testimony

Corrieri argues that the court abused its discretion when it permitted the State to inquire about his juvenile adjudication. The State asserts that despite the warnings given by the court, Corrieri presented evidence of his character which would have tended to mislead the jury.

We review the decision of the trial court to admit or exclude such evidence under an abuse of discretion standard "because the question of admissibility frequently involves the weighing of probative value against considerations militating against its admissibility." *State v. Robinson*, 628 A.2d 664, 666 (Me.1993); *See* M.R.Evid. 403.

Once a party opens the door to testimony, he may not claim error in the admission of the line of questioning he initiated. *State v. Whitmore*, 540 A.2d 465, 467 (Me. 1988); *See also* Field & Murray, *Maine Evidence*, § 103.8 at 1–30 (3d ed. 1993). In *State v. Ruest*, 506 A.2d 576, 577 (Me.1986), the court allowed the State to cross-examine a witness regarding a prior incident between the victim and the defendant. Although the determination of the relevance of evidence is reviewed for clear error, frequently the decisions of the trial court to admit or exclude such evidence are reviewed under an abuse of discretion standard because the defendant had opened the door for examination of otherwise inadmissible incidents by raising questions as to the veracity of the victim. *Id.*

Here, the court cautioned that if Corrieri attempted to create a misleading impression of his character, he would open the door for the State to question him on the facts of his prior juvenile conviction. Corrieri testified that he was a person incapable of committing the crimes charged.[3] We find that the trial court properly acted within its discretion by allowing questioning about Corrieri's prior juvenile offense. *See Ruest*, 506 A.2d at 577.

Corrieri incorrectly asserts that the court improperly excluded the testimony of attorney Charles Devoe during the presentation of evidence. Initially, the court ruled on Corrieri's *motion in limine* and excluded the

---

**2.** Corrieri's accounting of the facts vastly differed from the evidence presented by the State.

**3.** When asked if he were involved in the planning of the robbery once Danforth joined the group, Corrieri responded, "No. I was just keeping to myself and kind of just keeping quiet because, I mean, I really couldn't associate with that type of behavior." Likewise, when asked if he believed

Lewis and Danforth would go through with their plan, Corrieri answered, "No. I never believed it would take place, I mean especially with me. I mean, I had my whole life together. There was just no reason to do anything like this and *no reason for them to believe that I would do something like this.*" (emphasis added).

hearsay testimony of Devoe. Corrieri does not now contest that ruling. Corrieri contends that circumstances changed over the course of the trial which may have provided an admissible basis for Devoe's testimony. However, Corrieri never requested that the court reconsider allowing Devoe's testimony. A matter not raised at trial and later raised for the first time on appeal is unpreserved and the court's action is reversed only for obvious error. *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 714 (Me.1993). We find no obvious error.

### Prosecutorial Misconduct

■ Corrieri contends he was deprived of his right to a fair trial, arguing *inter alia* that the State made improper comments during its cross examination and the closing argument. Because Corrieri did not object at the trial, we review for obvious error. *State v. Moontri*, 649 A.2d 315, 316 (Me. 1994); *State v. Comer*, 644 A.2d 7, 9 (Me. 1994). Obvious error is error so highly prejudicial it virtually deprives the defendant of a fundamentally fair trial. *Comer*, 644 A.2d at 9.

■ In closing, the State commented on Corrieri's defense of duress.[4] A lawyer may not "[a]ssert a personal opinion . . . as to the credibility of a witness . . . but a lawyer may argue, on the lawyer's analysis of the evidence, for any position or conclusion with respect to matters stated therein[.]" M.Bar R. 3.7(e)(2)(v). The question, therefore, is whether the prosecutor's comment is based on the facts in evidence or on a personal belief that the defendant has lied. *State v. Moontri*, 649 A.2d at 317. As we have said, when the case is a close one a prosecutor's statements of personal opinion are particularly troubling. *See State v. Weisbrode*, 653 A.2d 411, 416 (Me.1995) and cases cited therein.

The evidence presented at trial was overwhelmingly unfavorable to Corrieri and contradicted his defense. Both Danforth and Lewis testified to Corrieri's involvement in the robbery. Corrier's own testimony that he knew of the plan to rob Weston, but believed Lewis and Danforth would not carry it out in his presence, was of questionable credibility. Even less credible was Corrieri's testimony that he was forced to participate in the robbery in light of his own testimony that, although the keys to the car were left in the ignition and at one point he had the opportunity to escape, he did not flee in his car. The State suggests that its comments were justly based on the weight of the evidence against Corrieri's allegation of duress. It is clear, however, that the State's remarks are more than comments on the evidence.

Unlike *State v. Tripp*, 634 A.2d 1318, 1319–1321 (Me.1994), where we found obvious error and set aside the conviction, the State did not ask the defendant to comment on the credibility of the other witnesses. In *Comer*, we found no obvious error in the prosecutor's comments concerning the veracity of the victim, despite the use of ill-chosen words. *Comer*, 644 A.2d at 10. We find the prosecutor's use of the word "nonsense" and other possibly ill-chosen words to describe Corrieri's defense of duress, within the context of the entire three day trial, did not affect the jury's determination or Corrieri's right to a fair trial. *See Comer*, 644 A.2d at 10. Corrieri's remaining complaints of prosecutorial misconduct do not merit comment. We find, therefore, no obvious error.

### Corrieri's Sentence

■ Corrieri was adjudged guilty of burglary while armed with a firearm, robbery, and criminal threatening with the use of a dangerous weapon. The court imposed a

**4.** What that means, ladies and gentlemen, is, even if in this case, you were to believe—which, certainly, I don't think the evidence in any respect shows that you should believe it—but even if you were in the position, ladies and gentlemen, in this case where you believed that duress just before they went into the house was actually placed upon the defendant. . . . Now, I'm sure it's no secret to you that the State's position is that the duress defense is a bunch of

nonsense and that the facts with regard to that are simply—I won't say facts, but the testimony with regard to that are simply untrue.
Later in the closing, the prosecutor stated: And I submit to you, basically, you should believe about nothing of what this defendant said based upon the evidence here today. . . . I suggest to you that if we were going to give out an Oscar for acting here, the defendant would get it.

sentence of twenty years, with all but twelve years suspended, and six years probation on both the burglary and robbery charges, and a sentence of three years on the criminal threatening with the use of a dangerous weapon charge. The sentences to be served concurrently. We review the sentences for misapplication of principle, scrutinizing the suspended portions of the sentences as well as that portion of the final sentence that is unsuspended. *State v. Cloutier,* 646 A.2d 358, 361 (Me.1994). The sentencing court in this case did not have the benefit of our teachings in *State v. Hewey* wherein we outlined the determinations that must be made by the sentencing court. *State v. Hewey,* 622 A.2d 1151, 1154–55 (Me.1993). As we said in *Cloutier,* 646 A.2d at 361:

> "As to each offense, the court must first determine the basic period of incarceration based solely on the nature and seriousness of the offense. [citation omitted] After deciding on the basic period of incarceration, the court should determine the maximum period of incarceration. [citation omitted] Finally, the court must consider whether to suspend all or a portion of the maximum period of incarceration and require a defendant to serve a period of time on probation. [citation omitted] In determining the maximum period of incarceration and the final sentence, all of the aggravating and mitigating circumstances peculiar to the defendant, including the need to protect the public, should be considered by the court." [citation omitted]

■ Thus, the sentencing court is first directed to look to the nature and seriousness of the offense in order to determine the basic period of incarceration. Corrieri was found guilty of breaking into a private, occupied residence at night with a loaded weapon in the company of two other intruders. This is certainly a most grievous manner in which one could commit a burglary while armed. Although it is true that no one was shot or physically hurt in the incident, the absence of these additional criminal acts attendant to this armed entry into a private residence does not lower the placement of that armed entry on its own scale of seriousness. We therefore cannot say that it would have been a misapplication of principle had the sentencing court set as a basic sentence the maximum sentence applicable to this Class A crime.

■ Once having determined the basic period of incarceration, the sentencing court must then determine the maximum period of incarceration and the final sentence considering the aggravating and mitigating circumstances peculiar to the offender. We review the trial court's action for abuse of discretion.

■ Contrary to Corrieri's argument on appeal, the trial court did consider the disparity between the sentence imposed on Corrieri and the sentences imposed on his co-defendants. A sentencing court is required to "eliminate inequalities in sentences that are unrelated to legitimate criminological goals." 17–A M.R.S.A. § 1151(5). The trial court discussed several aspects of criminal behavior and the criminal process in explaining its sentencing decision. The court noted that the co-defendants accepted responsibility for their criminal acts by their pleas of guilty and their cooperation with the prosecution. The trial court concluded that the conduct of Corrieri at trial, including the rendition of a fanciful story of duress, indicated a complete lack of remorse and a refusal to acknowledge responsibility for a serious criminal act.[5] This lack of remorse was particularly troubling to the trial court because Corrieri's record included a juvenile conviction similar to the present offense in which, as the prosecution told the court at sentencing, Corrieri entered a home with two co-defendants, tied up the resident, threatened him with a knife, and stole some money. The trial court saw in this history and Corrieri's conduct at trial a justification for differential treatment between Corrieri and the co-defendants:

> I think you need a fairly long time of incarceration to emphasize to you the seri-

5. The trial court cannot penalize a defendant for exercising his or her right to trial. That rule does not immunize a defendant from an evaluation of his or her conduct at trial by the trial court. Such an evaluation was clearly an important factor in the trial court's sentencing decision.

ousness of the events, emphasize your need to accept responsibility to comply with society's rules as opposed to trying to talk your way out of it or justify your way out of it without remorse or responsibility which has been done here. I think that's necessary for both your situation to deal with what seems to be a serious lack of responsibility on your part and it protects society.

This rationale includes a legitimate criminological basis for sentencing Corrieri more harshly than the co-defendants.

Although the trial court did not go through the formal steps set forth in *State v. Hewey,* a close review of the rationale offered by the trial court for its decision indicates that all of the considerations required by *Hewey* were evaluated: the circumstances of the offense, the aggravating and mitigating circumstances relating to the offender, and the justification for suspending a portion of the sentence.

The entry is:

Judgments of convictions and the sentences imposed thereon affirmed.

All concurring.