1997 ME 165

**STATE of Maine**

v.

**Scott BERUBE.**

Supreme Judicial Court of Maine.

Argued March 3, 1997.

Decided July 23, 1997.

[redacted]

[redacted]

Michael P. Cantara, District Attorney, David D. Gregory, of counsel (orally), Alfred, for State.

Terri M. Kosoff (orally), Westbrook, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendant, Scott Berube, has been granted leave to appeal the sentence imposed in the Superior Court (York County, *Delahanty, J.*) on his conviction for Class B manslaughter. Defendant argues that the court abused its discretion by failing to consider two instances of sentencing offered for its consideration in determining his basic period of incarceration and by failing to consider the appropriate mitigating factors in reaching a maximum period of incarceration. He also contends that the court did not inquire into his ability to pay as required by 17–A M.R.S.A. § 1325 (1983 & Supp.1996), thus improperly ordering restitution. We find no error in the imposition of a final sentence of eight years and affirm that portion of defendant's sentence. We overrule, in part, the interpretation of 17–A M.R.S.A. § 1325 set out in *State v. Blanchard*, 409 A.2d 229 (Me. 1979), and vacate that portion of defendant's sentence imposing restitution only to permit the trial court to specify the time and method of payment.

[¶ 2] A jury found defendant guilty of Class A manslaughter. He was originally sentenced to twelve years in the custody of the Department of Corrections and was required to pay $4,842.80 in restitution to the estate of the victim for funeral expenses. Defendant then appealed his conviction. We concluded, in *State v. Berube*, 669 A.2d 170 (Me.1995), that the trial court committed obvious error by failing to instruct the jury regarding defendant's statutory defense pursuant to 17–A M.R.S.A. § 203(3)(A) (Supp. 1996)[1] and remanded with instructions to enter a judgment of conviction of Class B manslaughter. On remand, defendant was resentenced to eight years and again ordered to pay $4,842.80 in restitution.

I. Basic Period of Incarceration

[redacted] [¶ 3] Sentencing to a term of imprisonment in the context of murder or a Class A, Class B, or Class C crime is statutorily defined as a three-step process.[2] The sentencing court must first "determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." 17–A. M.R.S.A. § 1252–C(1) (Supp.1996). In doing this, the court is to measure the defendant's conduct "on a scale of seriousness against all possible means of committing the crime in order to determine which acts deserve the most punishment." *State v. Lilley*, 624 A.2d 935, 936 (Me.1993). The court is also to consider the basic period of incarceration imposed for similar conduct of other offenders convicted of offenses within the same classification. *State v. Bolduc*, 638 A.2d 725, 727 (Me.1994). The imposition of a basic period of incarceration is reviewed for the misapplication of principle. *State v. Wood*, 662 A.2d 908, 913 (Me.1995); *see also State v. Hallowell*, 577 A.2d 778, 781 (Me.1990) (it is not enough that we might have imposed a different sentence;only when the sentence appears to have erred in principle will we alter it).

1. 17–A M.R.S.A. § 203 (Supp.1996) provides, in pertinent part:

> **3.** Manslaughter is a Class A crime except that:
>
> **A.** It is a defense to a prosecution of a manslaughter based upon the reckless or criminally negligent operation of a motor vehicle, which reduces the crime to a Class B crime, that the death of the victim resulted from conduct that would otherwise be defined only as a civil violation or civil infraction....

2. The three-step analysis set forth in this statute mirrors the analysis developed by this court in *State v. Hewey*, 622 A.2d 1151 (Me.1993).

[¶ 4] When imposing a sentence upon defendant for a Class A manslaughter, the court analyzed defendant's conduct as follows:

The trial court first determines the basic period of incarceration by reference to the offender's criminal conduct.... I have to look at the facts of this particular case. We have a death that came about as a result of your conduct in operating a motorcycle on July 16, 1992. I look at the fact and circumstances surrounding the operation of that motor vehicle in daylight on a busy highway grossly in excess of the speed limit in any reasonable speed for the circumstances....

The court should also look at and give consideration to the basic period of incarceration that has been imposed for similar conduct of other offenders convicted of offenses within the same classification to determine which act justifies imposition of the most extreme punishment ... let's look for the moment just at the motor vehicle manslaughter cases.

[¶ 5] The court then looked to data compiled by a justice of the Superior Court reflecting various sentences imposed in manslaughter cases. The court noted the limitations of relying on the statistics before it, stating "the only real thing we can gather from [this data] is what the maximum sentence was with some of it being suspended."[3] Examining the available information, the court noted that, out of the forty-six cases in the study, thirteen involved sentences of ten years or more and seven involved sentences in the six-to-ten-year range.

[¶ 6] When resentencing defendant for Class B manslaughter, the court adopted its remarks at the original sentencing hearing concerning its reasons for the sentence imposed, its awareness of other manslaughter cases, and the difficulty of making comparisons between them and the present case. Defendant brought two other manslaughter cases to the court's attention at this second hearing. The court noted that it knew nothing about the circumstances of those cases, other than the fact that alcohol was involved, or if there were any aggravating or mitigating circumstances taken into account by the court. The court then stated that, except for the fact that defendant was being charged with a Class B instead of a Class A crime, the manner in which defendant committed the crime was the same:

The trooper would still testify to his opinion. The eye witnesses would still testify to their opinions. The accident happened in daylight, in a built-up area on a busy road and ... Mrs. Down[s'] body was severed in the accident. Here as far as the cause of the accident we substitute speed for alcohol....

■ [¶ 7] Initially, we note that the court failed to explicitly state the number of years determined to comprise defendant's basic period of incarceration. A term of years was not explicitly stated, at either sentencing hearing, until the court considered the aggravating and mitigating factors applicable in defendant's case. Before considering those factors during the first hearing, however, and after considering the nature of defendant's conduct, the court did note that in twenty of the forty-six cases that it was considering as comparable to defendant's situation, a sentence of between six and ten years was imposed. The discussion containing this comment and the court's analysis of the nature of defendant's conduct was adopted by the court at the second hearing. Thus, it can be assumed that the court intended defendant's basic period of incarceration, given the nature of his conduct, to similarly fall within that range.

■ [¶ 8] Defendant argues that the court should have given more weight to the two cases cited by him at sentencing when formulating his basic period of incarceration. The two vehicular manslaughter cases cited by defendant involved one eight-year sentence and one four-year sentence, all suspended, accompanied by a $1,000 fine. The

---

**3.** Some of the limitations noted by the court were that: some of the sentences had been imposed before manslaughter became a class A crime, the court had no knowledge of the seriousness of the conduct in each case, and it had no knowledge of any the mitigating or aggravating circumstances of the offenders or of whether the sentence was the result of a plea agreement.

only fact that the court knew about the circumstances of the defendants involved, or their conduct, was that both were drinking. Nothing in the record indicates that the court should have given more weight to these examples of sentencing than given to the many other sentences considered. The defense even conceded that the two cases were not reflective of the average sentence, stating: "Those two cases I gave you may be an exception." Class B manslaughter carries with it maximum penalties of ten years in jail, a twenty thousand dollar fine, and four years probation. 17-A M.R.S.A. §§ 1202(1); 1252(2)(B); 1301(1-A) (1983 & Supp.1996). Given the seriousness of defendant's behavior and the data concerning comparable sentences examined by the court, the court did not deviate from sentencing principles when it implicitly determined defendant's basic period of incarceration to be between six and eight years. *See State v. Rosado,* 669 A.2d 180, 185 (Me.1996) (although it would have been better practice to spell out each step explicitly, the court did undertake all necessary steps and adhered to the statutory purposes in sentencing).[4]

## II. Maximum Period of Incarceration

[¶ 9] After noting the seriousness of defendant's conduct at his second sentencing, the court considered defendant's background. No new materials had been submitted by the parties, but the court stated that it had reviewed the transcript of the original sentencing hearing and the materials submitted at that time. At the first sentencing hearing, the court had been presented with evidence of defendant's extensive criminal history, including a substantial motor vehicle offense record, in both Maine and Massachusetts. Notably, defendant was convicted for criminal threatening in Maine in 1991 and received a 364 day suspended sentence and one year of probation. It was during this probationary period that defendant committed the manslaughter at issue here. Also while on

probation for his criminal threatening conviction, defendant was charged with terrorizing, convicted of operating after suspension, and, during the month before the instant offense, was fined for raising the front wheel of his motorcycle off the roadway and warned for speeding.

[¶ 10] According to the presentence report, after learning of his manslaughter indictment in the present case, defendant reportedly stopped contacting his probation officer, stopped attending "Violence No More" as required by his probation order, and was no longer able to be reached at his Springvale residence. Defendant's probation officer reported that defendant was arrested as a probation violator on December 3, 1992 and that his probation was revoked on December 9, 1992 for failure to comply with his probation conditions. In addition to the presentence report, the court also considered the affidavit of Susan Seaman, a jail security officer. According to this affidavit, while defendant was incarcerated in the York County Jail pursuant to his December 1992 probation revocation, Seaman overheard him state to other inmates: "They want to ruin my life because I killed some eighty-year-old bag who already lived her life."

[¶ 11] Defendant also submitted materials to the court at the first sentencing hearing. The court considered a sentencing memorandum prepared by the defense stressing that the accident at issue was not alcohol-related, that defendant is a young man, and that he has a steady work history and no alcohol or other substance abuse problems. The memorandum states that defendant has no recollection of having made the comment reported by Seaman and attributes any comment he might have made to anger and jailhouse bravado. Supporting the latter contention is the affidavit of Robert Page, a licensed clinical social worker counseling defendant, who stated that defendant had been treated for post-

---

4. Defendant also cites statistics found in Daniel E. Wathen, *Sentencing and Statistics,* 6 ME.BAR J. 290 (1991), in support of his argument that the basic period of incarceration imposed upon him reflects a misapplication of principle. Defendant did not bring this information to the attention of the court at sentencing and we decline to consider the argument for the first time on appeal. We note the observation made in the cited article, however, that "the sample of cases collected (in the article) is small and suffers from a biased method of selection ... Accordingly, the data should not be considered as furnishing a guideline." *Id.* at 290.

traumatic stress syndrome and that this could explain the angry comment. The memorandum and Page's affidavit state that defendant feels remorse for what happened and that he has accepted responsibility for his actions. The court also heard from defendant and defendant's mother.

[¶ 12] In analyzing the aggravating circumstances present in defendant's case during his second sentencing hearing, the court considered defendant's background, "his long history of operating vehicles in excess of the speed limit, in a callous attitude towards operation of vehicles and other people." As at his first sentencing, the court found no mitigating circumstances. Given the seriousness of defendant's conduct, the fact that the offense was committed while he was on bail, and "what appear[ed] to the Court to be a lack of remorse, the Court deem[ed] ... an appropriate sentence to be eight years at the Department of Corrections."

[¶ 13] During the second step in sentencing, the court is to determine the maximum period of imprisonment "by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest." 17–A M.R.S.A. § 1252–C (Supp.1996). We have stated that factors properly considered as mitigating include a lack of prior criminal conduct, true remorse, and factors indicating a favorable prospect of rehabilitation or a lesser likelihood of reoffense. *State v. Roberts*, 641 A.2d 177 (Me.1994). Aggravating factors to consider include a prior criminal record, lack of remorse, and other circumstances indicating a high probability of reoffense. *Id.* The sentencing court's determination of a maximum period of incarceration is reviewed for an abuse of discretion. *State v. Corrieri*, 654 A.2d 419, 423 (Me.1995).[5]

[¶ 14] Defendant asserts that the trial court erred by considering the Seaman affidavit when determining that defendant did not feel remorse for his actions and by giving no weight to defendant's expressions of remorse and his young age as mitigating factors. The court was entitled to disregard defendant's expressions of remorse given his past history and the evidence before the court regarding his statement while in prison. Furthermore, the court's consideration of the Seaman affidavit was not in error. The court has broad discretion to determine what information it will consider in sentencing. *State v. Wilson*, 669 A.2d 766, 769 (Me.1996). Due process only limits this discretion by requiring that the information be factually reliable. The State offered the statement made by defendant, a party-opponent, by sworn affidavit. The court did not err in considering the affidavit and did not exceed the bounds of its discretion in setting defendant's maximum period of incarceration at eight years.

### III. Restitution

[¶ 15] Defendant contends that the court had a statutory obligation to inquire into his financial situation and determine that he has an ability to pay the amount included in the restitution order. Because the court did not do so, he argues, the order must be vacated. Maine's criminal code authorizes the imposition of restitution as compensation for economic loss to a victim. 17–A M.R.S.A. 1152(2–A); 1321–1330 (1983 & Supp.1996). Restitution must be considered as an option during sentencing. 17–A M.R.S.A. § 1323(2) (Supp.1996) (in those cases where the court chooses not to order restitution, it must state the reasons for its decision on the record). In determining the amount of restitution, the court is statutorily required to consider several factors including the financial ability of the offender to pay. 17–A M.R.S.A. § 1325(1) (1983).

[¶ 16] This requirement, that the court consider "ability to pay," has been interpreted, in conjunction with other statutory provisions, to mean that "the sentencing Justice must arrive at a conclusion as to the defendant's ability to pay; absent such a determination, the Justice lacks authority to include

---

5. Defendant does not challenge the court's decision not to suspend any part of his sentence pursuant to the third step of the sentencing analysis. *See* 17–A M.R.S.A. § 1252–C(3).

an order for restitution in the sentence." *State v. Blanchard,* 409 A.2d 229, 238 (Me. 1979). Over time, our language in *Blanchard* has developed into a requirement that the court make an express finding, at the time of sentencing, that the offender has the ability to pay any restitution ordered by the court. *See e.g. State v. Webber,* 613 A.2d 375, 378 (Me.1992) (the court cannot impose restitution in the absence of a finding that the offender has or will have the ability to comply with the order sometime in the future); *State v. Plante,* 623 A.2d 166, 168 (Me.1993) (same, quoting *Webber*); *State v. Cloutier,* 646 A.2d 358 (Me.1994); *State v. Castle,* 655 A.2d 336, 337–338 (Me.1995) (even though it is likely that the order will not create excessive financial hardship, in the absence of a finding of ability to pay, restitution order must be vacated).

[¶ 17] The purpose of the Legislature in authorizing courts to order restitution was to "encourage the compensation of victims by the person most responsible for the loss incurred by the victim, the offender." 17–A M.R.S.A. § 1321 (1983). It noted that: "Restitution by the offender can serve to reinforce the offender's sense of responsibility for the offense, to provide him the opportunity to pay his debt to society and to his victim in a constructive manner, and to ease the burden of the victim as a result of the criminal conduct." *Id.* Delineated as one of the aims of sentencing is to "encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served." *Id.* at § 1151(2); *see also id.* at § 1321 (restitution to be applied when other purposes of sentencing can be appropriately served). The 1975 comment to the Maine Criminal Code emphasizes that "[section 1151 S]ubsection 2 specifically states that, whenever possible, restitution to the victims of crimes by those committing those crimes shall be required." Because the interpretation of Title 17–A, chapter 54 found in our current case law forces us to vacate restitution orders that

give effect to these legislative purposes and also comport with the requirements of chapter 54, according to its plain language, we now reconsider that interpretation.

[¶ 18] The assertion that a court is without authority to order restitution without first making an express, affirmative finding, after court initiated inquiry, that the offender is "able to pay" is not supported by the text of the criminal code. The language relied on to create this requirement, found in 17–A M.R.S.A. § 1325(1)(C), merely states that the court is to consider "ability to pay" when determining the amount of any restitution order. We, of course, do not mean to suggest that a court's authority to impose restitution has no relationship to the defendant's financial situation. The relationship between that situation and the court's authority to order restitution, however, is given content, not in section 1325(1)(C), but rather, in section 1325(2), which provides:

2. Restitution shall not be authorized:

. . . .

D. When the amount and method of payment of monetary restitution or the performance of service restitution will create an excessive financial hardship on the offender or dependent of the offender. In making this determination, all relevant factors shall be considered, including, but not limited to the following:

(1) The number of the offender's dependents;

(2) The usual living expenses of the offender and his dependents;

(3) The special needs of the offender and his dependents, including necessary travel expense to and from work;

(4) The offender's income and potential earning capacity; and

(5) The offender's resources.

17–A M.R.S.A. § 1325(2)(D).[6]

[¶ 19] We interpret section 1325(2) to mean that, unless a court has evidence

---

**6.** We also note that 17–A M.R.S.A. § 1326 requires the court to specify the time and method of payment when fashioning a restitution order. It is at this stage that the court must "make a determination not merely of the particular

amount to be paid but also of the method by which payment is to be made, thereby to delineate that the restitution to be ordered is financially tolerable for the offender." *Blanchard,* 409 A.2d at 238. In complying with section

before it sufficient to support a finding that a restitution order would create an excessive financial hardship, or that any of the other factors listed in section 1325(2) are present,[7] it is authorized to impose restitution,in whole or in part, as compensation for economic loss. As it is the burden of the State to produce evidence as to the extent of the victim's loss, *State v. Lemieux,* 600 A.2d 1099 (Me.1991), and to prove, by a preponderance, a causal connection between the loss and the offender's conduct, *State v. Walker,* 675 A.2d 499 (Me.1996), it is the burden of the defendant to produce evidence about any excessive financial hardship created by a restitution order.[8] To the extent that *State v. Blanchard,* 409 A.2d 229 (Me.1979), and the cases that follow can be interpreted as requiring an express finding of "ability to pay," regardless of evidence in the record that such an ability exists and in the absence of any indication that payment would cause an excessive financial hardship, those cases are overruled.

 [¶ 20] In the present case, the court ordered a presentence investigation of defendant, including an inquiry into his financial status and employment history in reference to a possible restitution order. The report included information that defendant was employed in 1993 immediately before his incarceration for a Massachusetts offense and had maintained steady employment before that time with the exception of a period from 1991 through the first part of 1993 when a back injury prevented his employment. A motion for bail was filed with the court in 1996 that represented that defendant would have employment were he released.

Although there was a finding of partial indigency by the trial court in 1992, there is no other evidence in the record to support a conclusion that, at the time of his second sentencing in 1996, the restitution order in question would cause an excessive financial hardship on defendant or his dependents and the court was thus authorized to impose restitution. The court's restitution order must still be vacated, however, because of the court's complete failure to specify the time and method of payment as required by 17–A M.R.S.A. § 1326.[9]

The entry is:

Vacate that part of the sentence imposing restitution. Remand for determination of time and method of payment. Affirm sentence in all other respects.

---

1326, the court can fashion its order "to reflect the actual resources and realistic future earning capacity of a defendant, and at the same time insure that a victim is compensated to the maximum extent possible." *Cloutier,* 646 A.2d at 360; *see also id.* at 360, n.3.

7. That section also provides:

2. **Restitution not authorized.** Restitution shall not be authorized:
A. To a victim without that victim's consent;
B. to a victim who is an accomplice of the offender;
C. to a victim who has otherwise been compensated from a collateral source, but economic loss in excess of the collateral compensation may be authorized....

17–A M.R.S.A. § 1325(2) (1983).

8. The Maine Legislature recently added 17–A M.R.S.A. § 1330–A providing that:

If a defendant at the time of sentencing has consented to the imposition by the sentencing court of a specific amount of restitution, the defendant is thereafter precluded from seeking to attack the legality or propriety of the amount of restitution ordered if that amount does not exceed the specific amount consented to by the defendant.
P.L. 1997, ch. 30, § 1.

9. We do not hold that courts may not leave the details of a given restitution order to an appropriate state agency. *See State v. Stinson,* 424 A.2d 327, 335 (Me.1981).