2011 ME 7

**STATE of Maine**

v.

**Ryan D. WITMER.**

Supreme Judicial Court of Maine.

Argued: Nov. 10, 2010.

Decided: Jan. 6, 2011.

Darrick X. Banda, Esq. (orally), Daniel G. Lilley Law Offices, P.A., Portland, ME, for Ryan D. Witmer.

R. Christopher Almy, District Attorney, Susan J. Pope, Asst. Dist. Atty. (orally), Bangor, ME, for State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1]   Ryan Witmer kicked in a locked door to enter the residence of his soon-to-be ex-wife, at night, with a knife, when she, his infant daughter, and her boyfriend were in the residence.[1]   Witmer did so despite having been served with a court order prohibiting him from being at her residence.   In the ensuing minutes, all three adults were injured, Witmer and the boyfriend quite severely.

[¶ 2]   Witmer was indicted on seven counts for his conduct that night: (1) aggravated attempted murder (Class A), 17–A M.R.S. § 152–A(1)(B) (2010), of his wife and her boyfriend; (2) elevated aggravated assault (Class A), 17–A M.R.S. § 208–B(1)(A) (2010), of the boyfriend; (3) aggravated assault (Class B), 17–A M.R.S. § 208(1)(B) (2010), of his wife; (4) burglary (Class B), 17–A M.R.S. § 401(1)(B)(2) (2010); (5) reckless violation of a protective order (Class C), 19–A M.R.S. § 4011(4) (2010); (6) domestic violence stalking (Class D), 17–A M.R.S. § 210–C(1)(A) (2010); and (7) assault (Class D), 17–A M.R.S. § 207(1)(A) (2010), for injuring a police officer.   Witmer waived jury trial on the Class D assault and later pleaded guilty on that charge.   The court granted Witmer's unopposed motion for judgment of acquittal as to the domestic violence stalking charge.   The other five counts were considered by a jury after trial.

[¶ 3]   The jury found Witmer guilty of Class D assault against his wife as a lesser included offense of the aggravated assault charge, see 17–A M.R.S. § 207(1)(A), and of Class C reckless violation of a protective order, 19–A M.R.S. § 4011(4).[2]   The jury

---

1.   Although the parties do not dispute that two other children were in the residence that night, the court did not consider this fact in sentencing.

2.   The statute provides, in relevant part:

**1.   Crime committed.**   Except as provided in subsections 2 and 4, violation of the following is a Class D crime when *the defen-*

acquitted Witmer on the other charges. The Superior Court (Penobscot County, *Anderson, J.*) imposed a sentence of four years in prison, with none suspended, on the Class C reckless violation of a protective order conviction, and six months in prison, with all six months suspended, on the two Class D assault convictions.

[¶ 4] Witmer has filed this appeal from the court's denial of a motion to correct his sentence, *see* M.R.Crim. P. 35(a), alleging that the court illegally considered conduct for which Witmer was acquitted in determining the final sentence.[3] Because we conclude that the court considered only the conduct and effect of Witmer's reckless violation of a protective order in setting the four-year sentence, we find no illegality and affirm the sentence.

## I.  NATURE OF THE APPEAL

[¶ 5] Appeals that challenge the propriety of sentences, or the exercise of the sentencing court's discretion, are governed by Maine's sentence review statutes and procedures, which require the defendant to apply to the Sentence Review Panel. *See* 15 M.R.S. §§ 2151–2157 (2010); M.R.App. P. 20. Witmer did so in this case, but his application was denied.

[¶ 6] If a defendant files a motion to correct a purportedly illegal sentence or a sentence imposed in an illegal manner, and that motion is denied by the sentenc-

ing court, the defendant may appeal the adverse ruling directly. M.R.Crim. P. 35(a), (f). A direct appeal in such circumstances must concern "the legality of the sentencing decision, not the propriety of the term of confinement actually imposed," and the "alleged infirmity, even if one of law, must appear affirmatively from the record." *State v. Farnham,* 479 A.2d 887, 888–89 (Me.1984) (quotation marks omitted).

[¶ 7] Here, pursuant to M.R.Crim. P. 35(f), Witmer filed an appeal from the Superior Court's denial of his motion to correct his sentence on the ground that it was illegal or imposed in an illegal manner. Because Witmer's Rule 35 appeal presents a colorable claim that the court illegally considered conduct that formed the basis of charges of which Witmer had been acquitted, we address the single, discrete argument that an illegality is apparent in the record. *See* M.R.Crim. P. 35(f); *Farnham,* 479 A.2d at 889.

## II.  BACKGROUND

[¶ 8] In finding Witmer guilty of recklessly violating a protective order, the jury rationally could have found the following facts beyond a reasonable doubt based on Witmer's own testimony. *See State v. Mitchell,* 2010 ME 73, ¶ 2, 4 A.3d 478, 480. In April 2008, after Witmer's wife told him that she wanted a divorce, he moved out of the family residence. On June 15, 2008,

---

*dant has prior actual notice, which may be notice by means other than service in hand, of the order or agreement:*

    **A.**  *A temporary, emergency, interim or final protective order,* an order of a tribal court of the Passamaquoddy Tribe or the Penobscot Nation or a similar order issued by a court of the United States or of another state, territory, commonwealth or tribe; or

    **B.**  A court-approved consent agreement.
    . . . .

    **4.**  **Reckless conduct; assault.** A defendant who violates a protective order issued pursuant to section 4007 through conduct that is reckless and that creates a substantial risk of death or serious bodily injury to the plaintiff named in the protective order or who assaults the plaintiff named in the protective order commits a Class C crime. 19–A M.R.S. § 4011 (2010) (emphasis added).

**3.** The maximum sentence for a Class C crime is five years. 17–A M.R.S. § 1252(2)(C) (2010).

Witmer's wife went out with some friends, and Witmer watched their infant daughter at the family residence. When his wife returned, they had a disagreement, and Witmer spoke of wanting to kill himself. He went out to his car and came back to the doorstep of the residence with a gun in his hand. His wife locked all of the doors and called the police. She obtained a temporary protection from abuse order the next day.

[¶ 9] On June 27, 2008, the District Court (Bangor, *R. Murray, J.*) signed a protection from abuse order that was to remain in effect through December 19, 2008.[4] Witmer was immediately served with the protection from abuse order, which prohibited him from, among other things, assaulting his wife or going upon the premises of her residence.

[¶ 10] On the night of June 28, 2008, Witmer pulled into the driveway of his wife's residence, turned around, parked his car down the street away from the house, and walked to the residence. He obtained entry into the garage and found that she had placed a new lock on the door from the garage into the residence. He kicked open that door and entered the residence. Witmer knew that the protection from abuse order prohibited what he was doing.

[¶ 11] Witmer's wife and her new boyfriend heard Witmer kick in the door, and they went toward the noise. Witmer and the boyfriend fought inside the residence. During the altercation, Witmer pulled out his pocketknife and stabbed his wife's boyfriend in the back several times. Witmer then attempted to go upstairs to see his daughter. Witmer's wife blocked the way, and Witmer grabbed her roughly. She fell on the stairs. Witmer then grabbed her by her chest and pushed her up against the wall.

[¶ 12] The boyfriend got up and grabbed Witmer. During Witmer's struggle with the boyfriend, his knife scraped his wife's arm. Witmer then turned his knife on himself. He stabbed himself in the chest, pulled the knife out, and slashed his own throat. Witmer's wife called 911, and all three were taken to the hospital.

[¶ 13] Witmer was indicted on seven counts for the crimes enumerated above. Regarding the charge of reckless violation of a protective order, the indictment charged:

> On or about June 29, 2008, in Orrington, Penobscot County, Maine, **RYAN WITMER,** did recklessly violate a protection from abuse order issued under Title 19–A § 4007, of which he had actual prior notice, and *which prohibited him from assaulting [his wife].* **RYAN WITMER** assaulted or created a substantial risk of death or serious bodily injury to the plaintiff named in the protective order.

(Italicized emphasis added.)

[¶ 14] During the jury trial, the witnesses disagreed about whether Witmer or his wife's boyfriend was the aggressor in their violent altercation. Witmer admitted that he had been too rough with his wife on the stairs. He denied that he had scraped his wife's arm with his knife intentionally.

[¶ 15] The jury found Witmer guilty of reckless violation of a protective order (Class C), 19–A M.R.S. § 4011(4), and of simple assault on his wife (Class D), 17–A M.R.S. § 207(1)(A), as a lesser included

---

4. The court's order was entered after a full hearing at which both parties were present and had an opportunity to be heard.

offense of the aggravated assault charge.[5] The jury found him not guilty of the remaining charges.

[¶ 16] The maximum sentence that could be imposed on the Class C reckless violation of a protective order conviction was five years. *See* 17–A M.R.S. § 1252(2)(C) (2010); 19–A M.R.S. § 4011(4). The State argued for a full five-year basic sentence for the conviction of violation of a protective order, and Witmer argued for an eighteen-month basic sentence. The court set the basic sentence at four years. In doing so, the court first stated that it was "not going to be talking about [Witmer's sentence] in terms of the fact that he committed an attempted murder, because he was acquitted of this." The court then considered the circumstances of Witmer's violation of the protective order: Witmer was aware that he was prohibited by a court order from entering his wife's residence; he knew that his wife would be afraid and alarmed when he entered the house; he knew that his forced entry into the home when his wife and her boyfriend were inside would cause some kind of trouble; he was willing to break in even though he realized that his infant daughter was inside; and as a result of his violation of the protective order, his wife's boyfriend suffered serious injuries, he assaulted his wife, his wife suffered abrasions from the knife, and Witmer seriously injured himself. The court made it clear that it was "not disrespecting the jury verdict in the slightest" in setting the basic period of incarceration at four years—one year less than the statutory maximum—based on the way that Witmer had committed the crime of violating the protective order and the consequences of that criminal conduct. *See* 17–A M.R.S. § 1252(2)(C).

[¶ 17] The court then weighed aggravating and mitigating factors and set a maximum sentence of four years. The court determined that probation would not be appropriate because Witmer refused to acknowledge or address his own problems and had intentionally violated a court order. The court sentenced Witmer to four years in prison, none suspended, with no probation.

[¶ 18] Witmer moved to correct or reduce his sentence, see M.R.Crim. P. 35(a), asserting that the court improperly considered conduct of which Witmer was acquitted, but the court denied his motion. Witmer appealed to us.

## III. DISCUSSION

[¶ 19] In this direct appeal from the denial of the motion to correct the sentence pursuant to M.R.Crim. P. 35(a) and (f), we address Witmer's single challenge of illegality related to the consideration and weighing of explicitly acquitted conduct. Witmer contends that the court violated his due process rights by considering the knife-related injuries because the jury acquitted him of aggravated assault on his wife and of all offenses for which his wife's boyfriend was alleged as the victim. He also contends that the court should not have considered harms arising from his entry into the residence because he was not found guilty of any crime involving entering the residence but rather was convicted of violating the protective order by assaulting his wife, as alleged in the indictment.

---

5. *Compare* 17–A M.R.S. § 207(1)(A) (2010) ("A person is guilty of assault if ... [t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person."), *with* 17–A M.R.S. § 208(1)(B) (2010) ("A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes ... [b]odily injury to another with use of a dangerous weapon.").

[¶ 20] "Courts have broad discretion in determining what information to consider in sentencing; they are limited only by the due process requirement that such information must be 'factually reliable and relevant.'" *State v. Grindle*, 2008 ME 38, ¶ 18, 942 A.2d 673, 678 (quoting *State v. Hewey*, 622 A.2d 1151, 1154 (Me.1993)). A sentencing court has discretion to determine "[t]he appropriate procedure for ensuring the factual reliability" of sentencing information. *State v. Rosa*, 575 A.2d 727, 730 (Me.1990); *see State v. Soucy*, 2006 ME 8, ¶ 16, 890 A.2d 719, 724 (addressing uncharged conduct).

[¶ 21] A court may consult a spectrum of factors in making a sentencing determination. *See* 17–A M.R.S. § 1252–C (2010); *Hewey*, 622 A.2d at 1154. Initially, the court considers the "basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender." 17–A M.R.S. § 1252–C(1). The court then "determine[s] the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." *Id.* § 1252–C(2). These relevant sentencing factors "include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest." *Id.* In determining aggravating and mitigating factors, courts may consider psychological factors, *see Rosa*, 575 A.2d at 730, the likelihood of reoffense, *see State v. Berube*, 1997 ME 165, ¶ 13, 698 A.2d 509, 514, and mental illness, *see State v. Shortsleeves*, 580 A.2d 145, 150 (Me.1990). Finally, the court "determine[s] what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine[s] the appropriate period of probation to accompany that suspension." 17–A M.R.S. § 1252–C(3).

[¶ 22] In this case, Witmer is not arguing that the court considered uncharged conduct, which can be considered in determining the maximum period of imprisonment or in setting the final sentence, if appropriately presented, *see Soucy*, 2006 ME 8, ¶ 16, 890 A.2d at 724; 17–A M.R.S. § 1252–C(2), (3); nor is he asserting that the court considered other inappropriate aggravating factors in determining the maximum period of incarceration, *see State v. Whitten*, 667 A.2d 849, 851–52 (Me. 1995); 17–A M.R.S. § 1252–C(2). Rather, Witmer very specifically asserts that, in setting the basic sentence, the court improperly considered conduct forming the basis of charges of which he had been acquitted. This argument presents an issue considered by other courts and resolved in alternative ways.

[¶ 23] Some courts, including the California Supreme Court, have held that a sentencing court may consider all evidence related to a convicted offense even if the defendant was acquitted of other charges arising from that conduct. *People v. Towne*, 44 Cal.4th 63, 78 Cal.Rptr.3d 530, 186 P.3d 10, 24–25 (2008); *see People v. Pagan*, 165 P.3d 724, 730–31 (Colo.App. 2006) (same); *Nusspickel v. State*, 966 So.2d 441, 445–47 (Fla.Dist.Ct.App.2007) (same); *State v. Clark*, 197 S.W.3d 598, 600–02 (Mo.2006) (same); *State v. Ballard*, No. 08 CO 13, 2009 WL 3305747, at *11, 2009 Ohio App. LEXIS 4602, at *29–30 (Ohio Ct.App. Sept. 30, 2009) (same); *State v. Thames*, No.2008AP1127–CR, 2008 WL 5146778, at *2–4, 2008 Wisc. App. LEXIS 963, at *6–9 (Wis.Ct.App. Dec. 9, 2008) (same). In contrast, some time ago, the New Hampshire Supreme Court held that, because a defendant is presumed innocent, an acquittal must be interpreted as a jury finding of innocence. *State v. Cote*, 129

N.H. 358, 530 A.2d 775, 783–85 (1987). The *Cote* holding, however, was limited to the facts of that case, where the sentencing court had considered acquitted conduct to determine that the criminal conduct was not isolated.[6] *Id.*

[¶ 24] Here, we need not determine whether there are any circumstances under which a Maine judge may consider acquitted conduct, *see Towne,* 78 Cal. Rptr.3d 530, 186 P.3d at 24–25, because the court did not rely at sentencing on the other conduct for which Witmer was charged and acquitted. The court did not consider Witmer's intent toward his wife and her boyfriend at the time that he committed the violent stabbings and physical altercations that led to the aggravated attempted murder, elevated aggravated assault, and aggravated assault charges against him. Nor did the court find that Witmer broke into the house with a specific intent to harm his wife or her boyfriend.

[¶ 25] Instead, the court found that Witmer's violation of the protective order was a catalyst for the ensuing injuries, even if Witmer is not criminally responsible for those injuries. The court thus properly considered the manner in which Witmer committed the crime of reckless violation of a protective order and the consequences of that particular criminal conduct in sentencing him for that offense.

[¶ 26] Specifically, the court addressed the basic term of imprisonment by considering the nature and seriousness of the offense committed by Witmer, and stressed that it would respect the jury verdict and focus only on facts involved in the crime of reckless violation of a protective order. The court considered that Witmer "had specific knowledge of the protective order and the terms of the protective order, including the fact that he was not supposed to enter the residence where his wife was staying."

[¶ 27] The court did not conclude that Witmer attempted to kill his wife or her boyfriend, or that Witmer broke into the house with the intent to harm her. Rather, the court determined that, by breaking into his wife's home in violation of the protective order, Witmer knew or should have known he would "caus[e] fear in his wife" because of his earlier conduct involving a gun. The court also considered that Witmer had reason to believe that his daughter would be inside, and that such knowledge did not deter him from entering this house "even though he would be going inside knowing that most likely something bad would happen between him and his wife and the boyfriend."

[¶ 28] All of the facts that the court relied on were related to the crime of which Witmer was convicted.[7] Witmer

---

6. Witmer also cites two federal cases in support of his argument that sentencing courts violate due process if they consider conduct involved in crimes of which a defendant was simultaneously acquitted. In the first, *United States v. Coleman,* 370 F.Supp.2d 661, 673 (S.D.Ohio 2005), *overruled in part on other grounds by United States v. Kaminski,* 501 F.3d 655 (6th Cir.2007), the court discussed the impropriety of considering fraudulent intent when the defendant was acquitted of all counts alleging fraud, and in the second, *United States v. Pimental,* 367 F.Supp.2d 143, 144–45, 152–55 (D.Mass.2005), the trial court discussed its reasons for declining to consider wholly separate acquitted conduct. Neither of these cases, however, is persuasive in the circumstances here.

7. Witmer's assertion that the court was not authorized to consider the fact that he used force to enter the residence because he was acquitted of the burglary charge misses the point as well. To find Witmer guilty of burglary as charged in the indictment, the jury would have had to find, beyond a reasonable doubt that Witmer, "knowing he was not licensed or privileged to do so, did enter or surreptitiously remain in a structure of [his soon-to-be ex-wife] with the intent to commit

himself testified that he knowingly violated the order by forcing his way into his wife's residence. The record supports the court's finding that he did so in circumstances that "created a substantial risk of death or serious bodily injury" to his wife, *see* 19–A M.R.S. § 4011(4), and the court properly considered the nature and results of this conduct in sentencing Witmer.

[¶ 29] Accordingly, the record plainly indicates that the court focused on the manner in which Witmer committed the particular crime *of which he was convicted,* and the court was not required to ignore these facts merely because they also related to other crimes of which Witmer was acquitted. In such circumstances, a sentencing court is not required to disregard facts that result in a conviction simply because some of those facts may also have been relevant to other charges of which the defendant was acquitted.

[¶ 30] In sum, there is no illegality appearing plainly on the record, and we do not interfere with the sentence imposed. *See* M.R.Crim. P. 35(a), (f); *Farnham,* 479 A.2d at 889.

The entry is:

Judgment affirmed.

assault therein" and that Witmer "did intentionally or recklessly inflict or attempt to inflict bodily injury on [the boyfriend] during the commission of the burglary, or attempt to commit the burglary, or in immediate flight after such commission or attempt." *See* 17–A M.R.S. § 401(1)(B)(2) (2010). Because the crime of burglary requires proof of several elements, Witmer's acquittal of that crime does not establish that the jury disbelieved the undisputed evidence that Witmer broke into the residence. Thus, the court was not precluded from considering his forced entry into the residence in sentencing on the reckless violation of a protective order.